JOHN O. TEELE, trustee, *vs.* BISHOP OF DERRY & others.

Suffolk.　December 7, 8, 1896. — May 20, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Public Charity — Cy Pres — Lapsed Legacy.*

A bequest to trustees for the purpose of purchasing a lot and building a chapel in the town of C., in Ireland, to "forever be used for purposes of public worship under the auspices of the Roman Catholic Church," is a gift for a public charitable use.

The fact that a charity is to be administered in a foreign country does not of itself render it invalid.

The fact that a bequest is in the nature of a public charity does not require of itself that the court should frame a scheme to carry it out as near as may be to the purpose of the testator, if, for any reason, that has become impossible of performance in the manner which he has provided.

If a charitable purpose is limited to a particular object or to a particular institution, and there is no general intent, then if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply, and, in the absence of any limitation over, or other provision, the legacy lapses.

BILL IN EQUITY, filed January 24, 1893, by the trustee under the will of Margaret Bralley, to obtain the instructions of the court upon the following provisions thereof:

" Eighteenth.　I request that my trustees herein named may set aside a sum not exceeding twelve thousand dollars to be expended by them in the purchase of a lot and the building of a chapel thereon, in my native place, Carndrine, County Tyrone, Ireland, the title thereof to be vested in the Bishop of that diocese and his successors in office, and upon the trust that said chapel and lot shall forever be used for purposes of public worship under the auspices of the Roman Catholic Church.

" I do not intend to charge my trustees with the responsibility of attending in person to the purchase of the lot and the building of the chapel, but they may make the selection of the lot and contract for the erection of the chapel by correspondence with the Bishop of that diocese, and when they have made terms, conditions, and contracts with said Bishop to their satisfaction, they may pay over the money to him to such an amount as they may

have agreed upon with him for the purposes of this bequest, and the receipt of said Bishop therefor shall be a complete discharge of my said trustees from all responsibility on their part in that regard.

" The amount of money to be expended for such lot and chapel, and the time and manner of its payment, shall be left wholly to the decision of my said trustees except as herein expressly provided, but I wish to relieve them from the responsibility of superintendency in person, the expenditure of the money in Ireland, unless they should see fit to take that responsibility upon themselves."

Hearing before *Morton,* J., who reported the case for the determination of the full court. The facts appear in the opinion.

*C. R. Darling,* ( *W. S. Slocum* with him,) for the Bishop of Derry.

*W. M. Noble,* for the residuary legatees.

MORTON, J. We think that the bequest to trustees for the purpose of purchasing a lot and building a chapel in Carndrine, Ireland, to " forever be used for purposes of public worship under the auspices of the Roman Catholic Church," was a gift for a public charitable use. *Attorney General* v. *Briggs,* 164 Mass. 561, 567. *Bartlett, petitioner,* 163 Mass. 509, 514. *McAlister* v. *Burgess,* 161 Mass. 269. *Sears* v. *Chapman,* 158 Mass. 400. The fact that the charity would be administered in a foreign country does not of itself render the gift void, and there is nothing to show that it would not be a good public charity by the law of Ireland. *Fellows* v. *Miner,* 119 Mass. 541, 546. *Washburn* v. *Sewall,* 9 Met. 280. *Burbank* v. *Whitney,* 24 Pick. 146, 154. *Chamberlain* v. *Chamberlain,* 43 N. Y. 424, 432. Neither does the fact that the bequest is in the nature of a public charity require of itself that the court should frame a scheme to carry out as nearly as may be the purpose of the testatrix, if, for any reason, that has become impossible of performance in the manner which she has provided. " Assuming that the object is a charity, still there is no universal principle that the testator's particular intentions must be sacrificed by reason of that general object." *Bullard* v. *Shirley,* 153 Mass. 559, 560.

The difficulty in this case, and generally in cases like it, is

one of construction, — to find out the intention of the testatrix. When that is arrived at, the rules of law which apply seem to be pretty well settled. If it appears from the will that the intention of the testatrix was that her property should be applied to a charitable purpose whose general nature is described so that a general charitable intent can be inferred, then if by a change of circumstances or in the law it becomes impracticable to administer the trust in the precise manner provided by the testatrix, the doctrine of *cy pres* will be applied in order that the general charitable intent which the court regards as the dominant one may not be altogether defeated. There are numerous cases in which this rule has been applied. *Attorney General* v. *Briggs,* 164 Mass. 561. *Sears* v. *Chapman,* 158 Mass. 400. *Weeks* v. *Hobson,* 150 Mass. 377. *Theological Education Society* v. *Attorney General,* 135 Mass. 285. *Jackson* v. *Phillips,* 14 Allen, 539. *American Academy* v. *Harvard College,* 12 Gray, 582. *Church of Jesus Christ* v. *United States,* 136 U. S. 1. *Lyons* v. *Advocate General of Bengal,* 1 App. Cas. 91. *In re Maguire,* L. R. 9 Eq. 632. *In re Prison Charities,* L. R. 16 Eq. 129, 140, note. *In re Campden Charities,* 18 Ch. D. 310. *Biscoe* v. *Jackson,* 35 Ch. D. 460. *In re Slevin,* [1891] 2 Ch. 236.

But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply, and, in the absence of any limitation over or other provision, the legacy lapses. There are many cases which, it has been held, fall within this rule. *Bullard* v. *Shirley,* 153 Mass. 559. *Stratton* v. *Physio-Medical College,* 149 Mass. 505. *Easterbrooks* v. *Tillinghast,* 5 Gray, 17. *Clark* v. *Taylor,* 1 Drew. 642. *Corbyn* v. *French,* 4 Ves. 418. *Russell* v. *Kellett,* 3 Sm. & Giff. 264. *Fisk* v. *Attorney General,* L. R. 4 Eq. 521. *In re Ovey,* 29 Ch. D. 560. *In re White's trusts,* 33 Ch. D. 449. *In re Rymer,* [1895] 1 Ch. 19. *Carbery* v. *Cox,* 3 Ir. Ch. 231. *Attorney General* v. *Bishop of Chester,* 1 Bro. C. C. 444. *Cherry* v. *Mott,* 1 Myl. & Cr. 123.

The latest case in this Commonwealth in which the doctrine of *cy pres* has been applied is *Attorney General* v. *Briggs, ubi*

*supra*, in which it was held that there was manifest on the part of the testator a general intent to promote education in the neighborhood, and a purpose that the whole town would have the benefit of his bounty, if it could not otherwise be made available to the district which he had designated. In the present case the bequest is not for general religious purposes, nor is there anything to indicate that the object of the testatrix was to benefit the parish as a whole. Her object evidently was to provide a place in the village of Carndrine where the inhabitants could attend religious services and have the rites of their church administered without being obliged to go several miles to the parish church at Aughayarron, or to Castlederg in the neighboring parish. Her purpose was that a lot should be purchased and a chapel built at Carndrine for the benefit of the inhabitants there, not that the bequest should be devoted to repairing the church at Aughayarron or otherwise for the general benefit of the parish. The particularity of the language used forbids, we think, any other construction. Thus she requests her trustees to set aside a sum " to be expended by them in the purchase of a lot and the building of a chapel thereon in my native place, Carndrine, . . . the title thereof to be vested in the Bishop . . . upon the trust that said chapel and lot shall forever be used," etc. Again she says, " I do not intend to charge my trustees with the responsibility of attending in person to the purchase of the lot and the building of the chapel, but they may make the selection of the lot and contract for the erection of the chapel," etc. Still further, she provides that " the amount of money to be expended for such lot and chapel, and the time and manner of its payment, shall be left," etc.

From this it appears, we think, as already observed, that the leading purpose in the mind of the testatrix was the purchase of a lot and the building of a chapel at Carndrine for the benefit of those living there, and that to divert the bequest to repairing the parish church, or for a parish house, or to enlarging the parish graveyard at Aughayarron, which are the schemes suggested, would be devoting it to purposes inconsistent and at variance with those designated by the testatrix and not in furtherance of any general charitable intent on her part. We think that a general intent to advance religion in the parish hardly can be

inferred from the purpose thus particularly expressed to build a chapel in Carndrine.

It is found that it will be impracticable to carry out the scheme which the testatrix had in mind, and that it will be a wasteful expenditure of the trust fund to purchase a lot and build a chapel at Carndrine.   The population is small, not over one hundred, of whom about four fifths are Roman Catholics, and is diminishing. The people are too poor to support a chapel, and the Bishop refuses to assist in maintaining a chapel or supporting a priest, and without his help the people could do neither.

The purpose which the testatrix had in view has failed, therefore, and the case not being one in which the doctrine of *cy pres* properly can be invoked, it follows that the bequest must be held to have failed, and to pass under the residuary clause.   See *New* v. *Bonaker*, L. R. 4 Eq. 655.                    *Decree accordingly.*