INDUSTRIAL NATIONAL BANK, *Tr. vs.* ISABEL DRYSDALE *et al.*

JULY 31, 1956.

PRESENT: Flynn, C.J., Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This cause was previously before this court for the construction of the will of Robert Drysdale. See *Industrial National Bank* v. *Drysdale,* 83 R. I. 172, 114 A.2d 191. After our decision therein the parties asked leave to file a motion for reargument, and for certain exceptional reasons such leave was granted, *id.,* 119 A.2d 729. The reargument was expressly limited to a single question, namely, upon failure of the testamentary trust for the benefit of The People's Mission, Incorporated, of Pawcatuck, Connecticut, did the resulting trust which thereby arose inure to the benefit of the testator's next of kin or to his residuary legatees.

This question was not presented at the original hearing, apparently because the parties assumed that there could be no question of the right of the residuary legatees to take. And that is the position they sought to maintain at the reargument. The respondents contend that there is no authority to the contrary and the complainant, although neutral, has examined the question independently from an adversary viewpoint, to be of some assistance to the court, if possible, and it states in its brief "that it has been unable to find a single authority contrary to respondents' position."

All parties concede, however, that the citation of 3 Scott on Trusts, §399.3, p. 2112, in our original opinion seemingly supports the statement that the trust fund reverts

to the next of kin, but they contend that is due to the text writer's loose use of the expression "heirs-at-law or next-of-kin" in that section. They also claim that 2 Perry on Trusts and Trustees is guilty of the same looseness in §726 of that work. But they urge that both writers clear up this alleged looseness in other sections and make it plain "that where there are residuary legatees the property is distributable to them and not to the heirs-at-law or next-of-kin," and they cite 3 Scott on Trusts, §411, and 1 Perry on Trusts and Trustees (7th ed.), §160 (a).

The statement relied upon in Scott appears in §411, last paragraph, at the bottom of page 2175 and reads as follows: "A resulting trust arises on the failure of a trust not only where the trust was created *inter vivos* but also where it was created by will. In such a case it is impossible to restore the property to the testator himself since he is dead, but the parties will be put as nearly as may be *in statu quo* by imposing a resulting trust in favor of the heir or next of kin of the testator or for his residuary devisee or legatee." There is a footnote to the last sentence as follows: "The cases are so numerous that it is unnecessary to cite them. As a typical case holding that the legal title passes to the trustee but that he holds the property upon a resulting trust, see *Blake* v. *Dexter,* 12 Cush. 559 (Mass., 1853)."

The complainant seems to think that this footnote applies to the question with which we are concerned and urges it in support of the view that there is no authority in favor of the next of kin taking the property in the circumstances of the case at bar. Plainly, this is not so. The footnote itself clearly shows that Scott is referring to the principle that a resulting trust arises or is imposed as a matter of law. And the *Blake* case is cited as a typical application of that principle. The court had no occasion in that case to pass upon the question we are concerned with here, since in their opinion there is no reference to a residuary clause in the will.

The complainant also cites 3 Scott on Trusts, §413. It is stated therein: "Where the intended charitable trust fails at the outset, and the doctrine of *cy pres* is not applicable, there is no difficulty in enforcing a resulting trust. * * * Even where the charitable trust fails subsequently, if the doctrine of *cy pres* is not applicable, a resulting trust arises in favor of the settlor or his estate." In a footnote to this last sentence the author refers the reader to §399.3, which is the section we cited in our original opinion.

On the whole, after carefully examining all the sections of Scott on Trusts to which we have been referred, we cannot say that he clearly takes the position advocated by the parties here. We have not been able to find any statement therein to the effect that where a charitable trust vests at the testator's decease and functions for many years and thereafter fails, the bequest of the trust fund lapses and falls into the residue for the benefit of the residuary legatees rather than the next of kin.

However, there is such an explicit statement in 1 Perry on Trusts and Trustees (7th ed.), §160 (a) cited by respondent Louise Drysdale Andrews. In that section he states: "If the subject-matter of the bequest that fails is personal estate, the residuary legatee will take all that results; for a general residuary bequest is always held to carry every interest, whether undisposed of in the will, or undisposed of in any event. Therefore it is only where the will contains no residuary clause that the next of kin (or heirs in the United States) can assert any claim."

The cases cited in the footnote are for the most part old English and early American cases and they merely support the general principle that all property undisposed of in the will falls into the residue, but, in our opinion, they are not authority for anything more. We have examined all of those cases and do not find that the factual situation in any of them was like that here. Certainly in none of them was the court asked to decide to whom property should go which

had once vested absolutely in a trustee and many years thereafter could not continue to be applied because the *cestui que* trust ceased to exist.

Of course there is no difficulty in applying the principle of lapsed devises or bequests enunciated in those cases to instances where the property has not been disposed of by the testator or has not been well disposed of, and this court has often applied that principle. The following cases cited by the parties here are examples, but, with one possible exception, in none of them were the facts like those in the case at bar. *Peckham* v. *Newton,* 15 R. I. 321; *Woodward* v. *Congdon,* 34 R. I. 316; *R. I. Hospital Trust Co.* v. *Peck,* 40 R. I. 519; *Bliven* v. *Borden,* 56 R. I. 283; *Champagne* v. *Fortin,* 69 R. I. 10.

In the instant case it cannot be said that the trust fund was not well disposed of. Upon the decease of the testator on June 20, 1930 the title thereto vested absolutely in the complainant as trustee and for eighteen years thereafter, until November 16, 1948, it administered the fund in accordance with the terms of the trust. After that date it was unable to do so because the charitable corporation had been dissolved and thereafter ceased to exist. In such circumstances it cannot be truly said that the testator had not well disposed of the trust fund and therefore the bequest had lapsed. In some of the cases above cited that had happened, and hence the court treated the property as a lapsed gift which in accordance with the well-recognized rule fell into the residue. In other cases the gift over was held void and in that event also the gift fell into the residue. Our cases cited above are, with one exception, all examples of one or the other of such testamentary dispositions.

In *Peckham* v. *Newton, supra,* the legatee refused the legacy and the court held this was akin to a lapsed legacy and in the event was not well disposed of, hence it fell into the residue.

In *Woodward* v. *Congdon, supra,* specific legacies were

given to two legatees who were also residuary legatees. One legatee died without issue before the testatrix, and the question was whether his legacies fell into the residue or passed to the next of kin of the testatrix. Ordinarily in such circumstances that question would not have arisen but for the fact that the deceased was also a residuary legatee. The court held that such fact made no difference, because our statute, now general laws 1938, chapter 566, §7, expressly authorizes a lapsed legacy to fall into the residue regardless of the fact that the deceased was himself designated as a residuary legatee. Here again this was a case where the bequest was not well disposed of and never took effect in accordance with the expressed will of the testatrix.

In *R. I. Hospital Trust Co.* v. *Peck, supra,* the testator provided a trust for his widow for her life and after her death a gift over to a class. The court held the gift over was void as a perpetuity and therefore was undisposed of and fell into the residue.

In *Bliven* v. *Borden, supra,* we held that since the testator failed to provide for the ultimate disposition of a trust fund in a certain contingency it would fall into the residue at such time as undisposed of property. The fund was given in trust for the maintenance of a farm as long as it remained in the name of Borden, but if either the trustee or the beneficiary conveyed the farm the fund was to go to a charity. We construed the trust fund as one for the sole benefit of the beneficiary devisee while he continued to hold the farm. We also held that at his death the fund could no longer be applied to the maintenance of the farm since, under our construction of the will, the trust then terminated in accordance with the intention of the testator.

In *Champagne* v. *Fortin, supra,* which is the exceptional case above referred to, the facts were somewhat but not quite like those in the instant case. The testatrix devised her real estate in trust for the benefit of her children for life, and after the death of the last surviving child to her

grandchildren in fee simple. There were no grandchildren. In the circumstances we held that the devise to the grandchildren had clearly failed, but since the legal fee vested in the trustee at the death of the testatrix a resulting trust arose in favor of her heirs at law as of the time of her death.

The parties also cited the following cases from other jurisdictions: *Matter of Merritt*, 258 App. Div. 188; *Shannep* v. *Strong*, 160 Kan. 206; *In re Rymer*, 1 Ch. L. R. 19 (1895); *In re White's Trusts*, 33 Ch. L. R. 449; *Teele* v. *Bishop of Derry*, 168 Mass. 341. We have examined those cases and we think that with one exception they are not like the case at bar but rather resemble most of the above-cited Rhode Island cases. This will readily appear from a brief digest of each case.

In the case of *Matter of Merritt, supra,* the residue was given to trustees to establish a lodging house in Port Chester for indigent persons. The will provided that if any legacy failed it should fall into the residue, and if the residue failed it should go to the testator's sister or her lineal descendants. The trust failed at the outset and never took effect because the funds were wholly insufficient for the purpose intended. The court held that since the trust failed within the meaning of the language of the will, the fund should go to the sister's descendants in accordance with the express provision of the will.

In *Shannep* v. *Strong, supra,* land was left in trust to pay income therefrom to a certain local church. Income was paid regularly for several years until the local church ceased to exist. The testator's widow as his residuary legatee and devisee claimed the real estate on the ground that the trust had lapsed. The court, apparently without giving any consideration to the fact that the fee had vested in the trustee, upheld the widow's contention and further said if there were no residuary clause the land would descend as intestate estate. This is the only case which, on its facts, seems close

to the case at bar, but it is contrary to our conclusion in *Champagne* v. *Fortin, supra.*

In *Teele* v. *Bishop of Derry, supra,* a sum of money was given in trust to build a chapel of the Roman Catholic faith in Ireland. The trust failed and never took effect because the cooperation of the bishop of the diocese could not be obtained. Since it was held to be a particular charity and therefore *cy pres* could not be applied, the court agreed with the residuary legatees that the fund was undisposed of and fell into the residue.

We now come to a consideration of the English cases above cited. They are for the most part like the old English cases cited in the footnote to §160 (a) of 1 Perry on Trusts and Trustees hereinbefore referred to. Neither is like the case at bar.

*In re Rymer, supra,* was a case where a trust fund for the education of priests in a certain seminary failed because the seminary had ceased to exist before the death of the testator. The court held the fund could not be applied *cy pres* and since it was not well disposed of it fell into the residue.

*In re White's Trusts, supra,* involved a fund bequeathed for the establishment of an almshouse. Because of insufficient funds for the purpose, the trust never became operative. The court held that it was a case of a lapsed legacy and the fund fell into the residue.

After careful consideration of all the cases and texts cited we remain of the opinion that in the circumstances of the failure of the instant trust it cannot be said to have been not well disposed of by the testator or that it is a lapsed legacy which falls into the residue. On the contrary, we are clearly of the opinion that in the legal sense of the law of wills there can be no lapse where the property bequeathed has once legally vested in the trustee and the trust itself has become operative. In such a situation, if the trust thereafter becomes incapable of further operation or otherwise fails and *cy pres* is inapplicable, the devolution of the

trust fund out of the hands of the trustee can only be effected by the law and not by any reference to dispositive provisions of the testator's will.

The law effects such devolution here by imposing a resulting trust for the benefit of the testator's next of kin. As we said in *Champagne* v. *Fortin*, 69 R. I. 10, 18, "such resulting trust does not arise by reason of any actual intention of the testatrix but by reason of a lack of any intention on her part that the trustee should have a beneficial interest if the trust expressed in the devise failed. See 3 Scott on Trusts, §412. In other words, such resulting trust arises purely by operation of law."

That principle is stated in Scott on Trusts and in American Jurisprudence as follows: "Where an express trust fails, a resulting trust in favor of the settlor arises not because the settlor actually intended that it should arise but because he did not intend that the trustee should have the beneficial interest and did not make any other disposition of the property in the event that the intended trust should fail." 3 Scott on Trusts, §412, p. 2184. "Where it clearly appears that the testator intended that the property should be applied only to the particular purpose which failed, or for the benefit of a particular association or corporation which was dissolved, it has been held that the doctrine of *cy pres* is not applicable and that the property reverts to the heirs or next of kin of the settlor." 3 Scott on Trusts, §399.3, p. 212. "It is a general rule of equity jurisprudence that where a donor conveys, either by will or deed, property on a certain trust or for a certain purpose, and the trust or purpose fails, a resulting trust arises for the benefit of the donor if he is living, or, if the donor is dead, for the benefit of his heirs or next of kin * * *." 54 Am. Jur., Trusts, §197, p. 154.

We think it is certain that the bequest of the fund in the instant case did not lapse within the meaning of that term in the law of wills. Ordinarily a lapse occurs only where

the intended legatee dies *before the testator* and there is no express limitation or bequest over. *Marsh* v. *Wheeler,* 2 Edwards' Chancery Rep. 156, 161 (N.Y.).

There is an English case, which on its facts closely resembles the case at bar, in which the court clearly pointed out the impossibility of a lapse in such circumstances. *In re Slevin,* 2 Ch. L. R. 236 (1891). In that case there was a legacy to an orphanage. The orphanage was in existence before and after the testator's decease but went out of existence before the legacy could be paid over. The court decisively rejected the contention that the legacy had lapsed and at page 241 stated: "The rights as between the particular legatee and the residue are fixed at the testator's death." Earlier in the court's opinion, at page 239, Kay, L.J., speaking for the court, said: "Properly speaking, a lapse can only occur by failure of the object in the lifetime of the testator * * *." And at page 240 he stated: "The orphanage did come to an end before the legacy was paid over. In the case of a legacy to an individual, if he survived the testator it could not be argued that the legacy would fall into the residue. Even if the legatee died intestate and without next of kin, still the money was his, and the residuary legatee would have no right whatever against the Crown. So, if the legatee were a corporation which was dissolved after the testator's death, the residuary legatee would have no claim."

While that case did not involve a trust, the court's language with reference to when a testamentary gift lapses is equally applicable to a gift to a charity in trust. In the case at bar the gift to the trustee for the benefit of The People's Mission was absolute and vested immediately upon the death of the testator, since the charity was then in existence. Its dissolution many years later did not cause the gift to lapse and fall into the residue as undisposed of property. Notwithstanding the happening of that event, the title to the trust fund remained vested in the trustee and could

not be divested except by an act of the law creating a resulting trust. In the instant case to place the parties as near as possible *in statu quo* we apply the trust fund for the benefit of the next of kin without regard to the testator's will, since this equitable estate arises not by reason of any supposed intention of the testator but solely by operation of law.

In all of the cases cited by the parties here, except *Shannep* v. *Strong, supra,* it might well be deemed that the gift in effect lapsed, since for whatever cause it never took full effect upon the death of the testator. In such a case we think it quite correct to say that as a result the property was not disposed of or at least not well disposed of within the contemplation of the testator, and therefore it fell into the residue. To say the same in the circumstances of the case at bar would do violence to well-established principles of law with reference to the vesting and lapsing of legacies and devises. We are, therefore, of the opinion that our original decision in this matter must stand without modification.

The parties may present to this court for approval a form of decree, in accordance with our original opinion, for entry in the superior court.

*Hinckley, Allen, Salisbury & Parsons, Stuart H. Tucker, Douglas W. Franchot,* for complainant.

*William E. Powers,* Atty. Gen., *John Cosentino,* Ass't Atty. Gen., for State, *Albert J. Hoban,* Adm'r of Charitable Trusts.

*Edwin B. Tetlow,* for respondents Isabel Drysdale and Mary D. Lueck.

*Tillinghast, Collins & Tanner, Nathaniel S. Thayer,* for respondent Louise Drysdale Andrews.