MARGARET WILSON AND BRONNA SUMMERS; DONALD WILSON AND GEORGE SUMMERS, EXECUTORS OF WILL OF IDA PINNIX MURRAY, PLAINTIFFS v. FIRST PRESBYTERIAN CHURCH, REIDSVILLE, N. C. AND R. P. RICHARDSON AND O. A. ROTHROCK, MEMBERS OF SAID CHURCH AND ON BEHALF OF THEMSELVES AND ALL OTHER MEMBERS, DEFENDANTS,

— AND —

THE TRUSTEES OF ORANGE PRESBYTERY OF THE PRESBYTERIAN CHURCH, ADDITIONAL PARTIES DEFENDANT,

— AND —

ROBERT MORGAN, ATTORNEY GENERAL OF NORTH CAROLINA, ADDITIONAL PARTY DEFENDANT

No. 15

(Filed 12 December 1973)

1. Wills § 28— construction — intent of testatrix

　　A will must be construed so as to carry out the intent of the testatrix, unless that intent be contrary to public policy or to some rule

Wilson v. Church

of law, and her intent is to be determined by examining the entire will in the light of all surrounding circumstances known to the testatrix.

2. Trusts § 1— creation of trust

The express use of the word "trust" or "trustee," or of any other technical terminology, is not necessary to engraft a trust upon a devise or bequest made in language sufficient *per se* to pass the absolute, unencumbered interest in the property.

3. Trusts § 1— creation of trust

The mere statement in a will of the purpose for which a bequest or devise is made does not show *per se* an intent to create a trust for the accomplishment of that purpose; on the other hand, the fact that the testator used words which, literally, express a request, hope, desire or recommendation that the property given will be used for a specified purpose does not necessarily preclude the establishment of a trust by such bequest or devise.

4. Trusts § 4— devise for use in building church — charitable trust

Provisions of a will in which testatrix devised and bequeathed real and personal property to the First Presbyterian Church of Reidsville "for the purpose of building a Presbyterian Church on a lot herein-after devised to said Presbyterian Church, which church shall be built as a memorial to my beloved brother" and in which testatrix devised real property to said church with "the proceeds from said property to be spent in the building, repair or maintenance of the Presbyterian Church to be built as here-in-before provided" *are held* to have created a trust which was charitable in nature and not to have given the property to the First Presbyterian Church to be used by it for its own purposes and in its discretion.

5. Trusts § 4— cy pres doctrine

Under the *cy pres* doctrine, the superior court does not have authority to modify every charitable trust when it becomes impracticable to carry out the original purpose of the settlor or testator, but the court has such power only where the instrument creating the trust, interpreted in the light of all the circumstances known to the settlor or trustor, manifests a general intention to devote the property to charity. G.S. 36-23.2(a).

6. Trusts § 4— cy pres doctrine — scope of charitable intent

The *cy pres* doctrine may not be used to turn a narrow and particular charitable intent into a general charitable intent.

7. Trusts § 4— charitable trust — memorial to brother — cy pres doctrine

Where testatrix devised and bequeathed property to the First Presbyterian Church of Reidsville to be used to build a new Presbyterian Church at a specified location as a memorial to her deceased brother and the purpose of that trust has failed, the trust may not be modified pursuant to the *cy pres* doctrine since the testatrix had only a specific and limited charitable intent.

---
Wilson v. Church
---

8. Trusts § 10— failure of charitable trust — passage of property to residuary legatee and devisee

Where a will creating a charitable trust which failed contained a residuary clause, it is apparent that the testatrix favored the residuary legatee and devisee over her general heirs at law, especially where the residuary legatee and devisee was a close relative for whom the testatrix obviously had affection, and upon the failure of the trust the corpus passed to the residuary legatee and devisee.

Justice BRANCH dissenting.

Chief Justice BOBBITT joins in the dissenting opinion.

Justice SHARP did not participate in the consideration and decision of this case.

APPEAL by defendants from *Blount, J.,* at the 23 October 1972 Session of ROCKINGHAM, heard prior to determination by the Court of Appeals.

This action was instituted 20 June 1960 by Ida Pinnix Murray. She having died while it was pending, Margaret Wilson and Bronna Summers, her residuary legatees and devisees and D. C. Wilson and George Summers, her executors, were made parties plaintiff in her stead. The principal prayer for judgment in the complaint was that the court declare the rights of the parties under and by virtue of the will of Susan E. Pinnix, who died 29 April 1919. The plaintiffs contend that the will devised and bequeathed real and personal property to the First Presbyterian Church of Reidsville upon trust, that the trust so attempted to be created by the will never became operative or otherwise failed and, consequently, Ida Pinnix Murray (and now the present plaintiffs as her successors) became entitled to the said properties.

Although, in their answer, the church and its trustees alleged that the trustees of the church held the properties "for the purposes of said will and in recognition of said trust," they now contend that the will of Susan E. Pinnex did not establish a trust but devised and bequeathed the property to the church in fee simple and absolutely. The Trustees of Orange Presbytery and the Attorney General were made additional parties defendant. They contend that the will established a charitable trust, that, by reason of changed conditions, it is not now practicable to carry out the specific purpose of the testatrix and that the trust should be modified through application of the cy pres doctrine. These additional defendants differ in their contentions as to what would be a proper use of the trust fund.

· The First Presbyterian Church, its members and its trustees are hereinafter referred to as First Presbyterian and the Orange Presbytery and its trustees are hereinafter referred to as the Presbytery.

The pertinent provisions of the will of Susan E. Pinnix are as follows:

"THIRD: * * * I give and bequeath to J. F. Watlington and W. A. Trotter all the money which I may have on deposit in the Bank of Reidsville, also ten shares of Capital Stock of the Bank of Reidsville for a period of thirteen years from the date of my death *upon the following trust and for the following uses:* [The support of Nannie Ralph.] At the termination of *this trust* * * * I give and bequeath to the First Presbyterian Church, Reidsville, N. C. *for the purpose of building a Presbyterian Church on a lot here-in-after devised to the said Church.* (Emphasis added.)

* * *

"SIXTH: I give, devise and bequeath all my property, real, personal or mixed, not hereinbefore disposed of by me in this my will to my beloved brother Dr. J. A. Pinnix for the term of his natural life and at his death to be disposed of as hereinafter directed.

"SEVENTH: I give and devise to Ester H. Pinnix, wife of Dr. J. A. Pinnix, for the term of her natural life [certain described real property] subject to the life estate of Dr. J. A. Pinnix created in item sixth of this will. After the termination of the two life estates in said property, my executors shall sell said property either at public or private sale as in their judgment is deemed best. The net proceeds of said sale I give, devise and bequeath to the First Presbyterian Church, Reidsville, N. C. *for the purpose of building a Presbyterian Church on the lot here-in-after devised to said Presbyterian Church, which Church shall be built as a memorial to my beloved brother M. F. Pinnix, deceased.* (Emphasis added.)

* * *

"NINTH: I give and devise in *fee simple* to First Presbyterian Church, Reidsville, N. C. a certain lot [described] in the town of Reidsville, N. C. * * * subject to the life estate of Dr. J. A. Pinnix created in Item Sixth of my will. This lot *shall be used* by the said Presbyterian Church,

Reidsville, N. C. as a site for the erection of a Presbyterian Church to be erected on the said lot from the proceeds of property hereinbefore and hereinafter devised and bequeathed in my will. (Emphasis added.)

\*          \*          \*

"ELEVENTH: I give and devise to Mrs. Lillie Pinnix, wife of J. S. Pinnix, for the term of her natural life [described real property] subject to the life estate of Dr. J. A. Pinnix created in item Fourth [sic] of my will * * * . After the termination of the two life estates created in the above described property, I give and devise the said property *in fee simple* to the First Presbyterian Church, Reidsville, N. C. the proceeds from said property *to be spent* in the building, repair or maintenance of the Presbyterian Church to be built as here-in-before provided. (Emphasis added.)

"TWELFTH: I give, devise and bequeath the residue of my estate (if any) after taking out the devises and bequests above mentioned to Dr. J. A. Pinnix, in fee simple."

Dr. J. A. Pinnix died 28 August 1931, leaving a will in which his daughter, Ida Pinnix Murray, the original plaintiff herein, was the residuary legatee and devisee, subject to a life estate in the wife of Dr. Pinnix.

Esther H. Pinnix, wife of Dr. J. A. Pinnix, died 29 July 1949, and Mrs. Lillie Pinnix died 26 June 1959, thus terminating the last of the life estates created by these wills. The present action was instituted approximately eleven months thereafter.

The answer filed 1 September 1960 by the original defendants (First Presbyterian and the administrators, d.b.n., c.t.a., of the estate of Susan Pinnix), by way of a further answer alleges:

"9. That as evidenced by the record and the large increase in the M. F. Pinnix Fund, the *trust placed by will of Susan E. Pinnix upon the First Presbyterian Church of Reidsville, N. C.* has been handled by the trustees of the Church in a most capable, farsighted and efficient manner; that they have performed the duties of the First Presbyterian Church to the best interest of the *trust fund;* that the First Presbyterian Church is now and at all times has been able, ready and willing to administer said fund and

to carry out the intentions and wishes of the deceased, Susan E. Pinnix, to further the work of the Presbyterian Church and to commemorate the memory of her brother, M. F. Pinnix. (Emphasis added.)

*    *    *

"11. That the defendants feel that the construction of a second Presbyterian Church in Reidsville at this time is impractical; that the decision in this matter should be postponed for a period not exceeding ten years * * * .

"12. That pending the selection of a new location for the Church and the final disposition of the M. F. Pinnix *Trust* Fund, the defendants should be authorized by the Court to invest the *funds of the trust* by making first mortgage interest bearing loans to the Presbyterian Mission Churches in the area around Reidsville for the purpose of expanding and adding additions to said churches as memorials to M. F. Pinnix, and thereby complying with one of the objectives of the Will." (Emphasis added.)

The principal prayer for relief in the answer was that the *"trustees* of the M. F. Pinnix Fund" be authorized to sell certain of the properties and be allowed ten years to select a site and construct the proposed church thereon. (Emphasis added.)

On 6 October 1961 the then parties waived trial by jury and agreed that the matter be heard upon the pleadings and the agreed statement of facts. Significant stipulations in this agreed statement, in addition to stipulations of facts hereinabove set forth, were:

"2. That Susan E. Pinnex died testate on the 29th day of April, 1919. That her will, * * * provided among other things for the creation of a *trust fund to build a church*. That said church was to be built by the First Presbyterian Church of Reidsville, North Carolina, on a lot located on Burton Street, Reidsville, North Carolina, as described in her will. * * * (Emphasis added.)

"4. That, however, because of change of conditions since testatrix's death as hereinafter set forth, the church site on Burton Street as designated in the Susan Pinnix will should not be used for the erection of a church * * * .

"5. That there is no immediate need for a new Presbyterian Church within a radius of five miles of the Burton

Street lot; from studies and surveys of church needs another church may be needed sometime within a period of ten years; that while the trustees of the First Presbyterian Church feel that they have carried out all terms of the trust to date in a successful manner, in their judgment the Board of Trustees of Orange Presbytery in conjunction with its Extension Committee, are better qualified to organize a congregation, erect a church, and carry out all other provisions of the trust; the *Board of Trustees of Orange Presbytery* as well as the Extension Committee *have agreed that they will accept the trust and carry out all terms of the trust within ten years;* * * * (Emphasis added.)

\*        \*        \*

"9. * * * [T]he parties hereto do hereby agree and consent as follows:

(1) That the plaintiff shall receive from the trust assets the sum of $12,500.00. [This was paid to Ida Pinnix Murray.]

(2) That the plaintiff, upon receipt of the $12,500.00 above referred to, releases all claims which she, her heirs or assigns may have to the trust property *provided the provisions of Paragraph 3 below are carried out.* (Emphasis added.)

(3) That in the event the defendants or their successors do not erect a church in memory of M. F. Pinnix within a radius of five miles of the Burton Street site within ten years from the date of the judgment entered in this cause the defendants will not ask for a further extension of time and that *the plaintiff is authorized by motion in this cause to reaffirm her claim to the corpus of the trust.* (Emphasis added.)

(4) That the Board of Trustees of the Orange Presbytery be appointed Substitute Trustees in the place of the defendants.

(5) That * * * the lot on Burton Street [be sold] * * * the net proceeds from said sales to be added to the *corpus of the trust.* (Emphasis added.)

(6) That the *Substitute Trustees* be empowered to select and purchase a new site within a radius of five miles of the Burton Street lot and be empowered to organize a congregation and erect a church on the said new site within said period of ten years using all the net proceeds *from the trust fund* for this purpose, said church to be in memory of M. F. Pinnix. * * * ." (Emphasis added.)

Pursuant to this stipulation and agreed statement, a consent judgment was entered by Sharp, J., in the Superior Court of Rockingham County on 6 October 1961. In it, the Superior Court found the facts to be as set out in said stipulation, that a bona fide dispute existed between the parties as to the interpretation of the will and "the administration *of the trust*," and that the proposed settlement "is for the best interest *of the trust* and calculated to carry out the intentions of the testatrix under the changed conditions." (Emphasis is added.) Upon these findings of fact the Superior Court entered judgment, its decree and order being in the exact language of the stipulation and consent above set forth. To this judgment all of the then parties consented.

Following the consent judgment in 1961, to which it was not a party, the Presbytery adopted a resolution by which it accepted appointment as Successor Trustee, being under the impression that there was a trust as the prior parties had assumed. Studies thereafter made by the Presbytery, through agencies of the Presbyterian denomination, convinced the Presbytery that "it has not been possible to establish a new church within the terms of the consent judgment as had been hoped," and led it to the conclusion that "there was no reasonable prospect of fulfilling the terms of the consent judgment." A report so concluding was made to and adopted by the Presbytery at its meeting on 24 June 1971, prior to the filing of the plaintiffs' motion in the cause.

Ten years from the date of such judgment having expired without any church having been erected pursuant to the provisions of the judgment or to those of the will of Susan E. Pinnix, the present plaintiffs were made parties in lieu of Ida Pinnix Murray and the Presbytery was made an additional party defendant, the order reciting that the Trustees of Orange Presbytery had been "appointed the trustees of said property

by this court" but had not previously been formally made parties to the proceeding.

On 20 June 1972 the present plaintiffs filed a motion in the cause reciting the above stated facts, substantially, and praying that the Presbytery be ordered to file an account and, after payment of reasonable compensation to it and to counsel, the balance of the trust properties be delivered over to the present plaintiffs.

The Presbytery filed a response to the motion, in which it asserted "that no trust *may have been* created under the will" of Susan E. Pinnix, that the parties to the above mentioned consent judgment had no authority to agree to dispose of the assets of Susan E. Pinnix contrary to her will, and that the Presbytery, "pursuant to their legal duty *as trustees* to see to the preservation *of a trust* demonstrably intended to serve religious interests and therefore the public interest," opposes the plaintiffs' motion to transfer the assets to private uses. (Emphasis added.) The response further asserted that the specific object provided for by the will "became impossible and impracticable of fulfillment, in that it was totally unsuitable to build a Presbyterian Church on the Burton Street lot mentioned in her will," that from and after the entry of the consent judgment, the Presbytery pursued its *"duties to manage the trust,"* and that "it has not been and is not feasible or practicable 'to organize a congregation and erect a church' under Presbyterian auspices within five miles of the Burton Street site." (Emphasis added.) Accordingly, the Presbytery prayed that the court deny the motion of the plaintiffs and adjudge that *"the trust in suit shall continue in effect"* and be amended to authorize the Presbytery "to develop plans within the ministry and mission of the Presbyterian Church for any project of benefit to the Reidsville community, and to apply to [the] court for further orders" approving and authorizing it to proceed with the execution of such plans. (Emphasis added.) The response describes several activities of First Presbyterian and of the Presbytery, which, in the opinion of the Presbytery, would be of benefit to the Reidsville community and in which the fund could be beneficially used.

First Presbyterian also filed a response to the motion of the plaintiffs, its prayer being that the court deny the motion of the plaintiffs and declare that the properties are the "property

of First Presbyterian Church of Reidsville, N. C., free and clear of any alleged trust."

The Presbytery also moved that the heirs and next of kin of Susan E. Pinnix be made parties in order to protect the Presbytery against any assertion by them of an interest in the properties. This motion was denied.

At the hearing of the plaintiffs' motion in the cause, there was uncontroverted evidence that Susan E. Pinnix was not a Presbyterian, but was a Baptist.

At the hearing of the plaintiffs' motion in the cause, the Presbytery presented affidavits stating, "[I]t has been at all times since October 5, 1961 [the date of the consent judgment] impracticable to execute the authority purportedly extended to the Trustees of Orange Presbytery as 'Successor Trustees' under the aforesaid consent judgment, and at all times impracticable for the Presbytery itself * * * to organize a congregation and erect a church within five miles of the Burton Street location identified in the will of Susan E. Pinnix."

At the hearing in the Superior Court the Pastor of First Presbyterian testified as to various projects of the Church in which, in his opinion, the funds now held by the Presbytery could be used for the benefit of people in the area served by First Presbyterian. These included a child development center, a counseling service, and other social services.

The Presbytery also sponsors and conducts various sociological services in the Reidsville area, such as housing projects for elderly people.

It was stipulated by the Presbytery that no demand has been made upon it by any of the heirs of Susan E. Pinnix, as such, with regard to the subject matter of this litigation.

The Superior Court concluded that the cy pres doctrine is not applicable, that it is not necessary for the heirs of Susan E. Pinnix to be made parties to this litigation and that the claim of First Presbyterian to be the owner of the properties free from any trust obligations should be denied. It found, as facts, that the present plaintiffs have succeeded to the rights and interest of Ida Pinnix Murray, the original plaintiff, that if living she would have been entitled to the properties, under and pursuant to the above mentioned consent judgment, that more

than ten years have elapsed since the entry of such judgment and that no congregation has been organized or church erected or commenced as provided for in such judgment. Upon these findings, the court concluded that the plaintiffs are entitled to the properties. It ordered and adjudged that the Presbytery file an accounting with the Clerk of the Superior Court, that the costs of the action, including reasonable counsel fees, be paid from the properties and that, after such payment, the remaining properties be delivered over to the plaintiffs.

From this judgment First Presbyterian, the Presbytery and the Attorney General appeal.

*Griffin, Post & Deaton by Hugh P. Griffin, Jr., and William F. Horsley; Wharton, Ivey & Wharton by Richard L. Wharton for defendant appellants.*

*Dalton & Long by W. R. Dalton, Jr., for plaintiff appellees.*

*Russell G. Walker, Assistant Attorney General, for Robert Morgan, Attorney General, Intervenor.*

LAKE, Justice.

The first question for our consideration arises upon the contention of First Presbyterian that the properties belong to it free and clear of any trust.

Nothing in the consent judgment rendered in 1961, or in the stipulations of the parties upon which that judgment rested, supports this contention. On the contrary, the parties, including First Presbyterian, then expressly stipulated that the will of Miss Pinnix "provided * * * for the creation of a trust fund to build a church."

Dr. J. A. Pinnix, the sole life tenant of the lot on which the testatrix intended that the new church be built, died in 1931. Thereupon, the right of possession of this lot passed to First Presbyterian. The trust created for the support of Nannie Ralph in shares of stock of the Bank of Reidsville and in the account of the testatrix in that bank terminated in 1932, if not earlier, and, thereupon, this personal property also came into the hands of First Presbyterian. Other properties subsequently came into its hands, under the will, for addition to the fund and were added thereto. Thus, for approximately thirty years, First Presbyterian held these properties intact and then, pur-

suant to the consent judgment, delivered them over to a "Successor Trustee" (the Presbytery). First Presbyterian made no claim to be the owner of these properties, free from trust, until forty years after it first came into the possession of them, more than fifty years after the death of Miss Pinnix.

Thus, the claim of First Presbyterian finds no support either in the judgment to which it consented or in the actions of its members and officers who were the contemporaries of the testatrix. The claim of First Presbyterian must, therefore, stand or fall upon the legal construction of the will of Miss Pinnix.

[1, 2]   It is elementary that a will must be construed so as to carry out the intent of the testatrix, unless that intent be contrary to public policy or to some rule of law, and that her intent is to be determined by examining the entire will in the light of all surrounding circumstances known to the testatrix. *Y.W.C.A. v. Morgan, Attorney General*, 281 N.C. 485, 189 S.E. 2d 169; *Bank v. Home for Children*, 280 N.C. 354, 185 S.E. 2d 836; *St. James v. Bagley*, 138 N.C. 384, 50 S.E. 841. It is equally clear that the express use of the word "trust" or "trustee," or of any other technical terminology, is not necessary to engraft a trust upon a devise or bequest made in language sufficient per se to pass the absolute, unencumbered interest in the property. *Stephens v. Clark*, 211 N.C. 84, 189 S.E. 191; *Witherington v. Herring*, 140 N.C. 495, 53 S.E. 303; *King v. Richardson*, 136 F. 2d 849 (4th Circuit 1943); 54 AM. JUR., Trusts, § 40; 15 AM. JUR. 2d, Charities, § 8; Scott on Trusts, 3d Ed, § 351.

Since the problem for the court in each case is to ascertain the intent of the particular testator and the circumstances surrounding each testator vary, decisions reached in other cases, whether by this Court or by courts of other jurisdictions, are informative but not controlling. Professor Scott says in his treatise on Trusts, 3d Ed. § 25.2, "[W]here the question is one of ascertaining the intention of the testator, any hard and fast rule is inappropriate," and "[S]ince each will differs from every other will, the decisions are of importance only in showing how somewhat similar situations have been dealt with by the courts." Similarly, Professor Atkinson in his treatise on Wills (1937 Ed.), § 265, says: "It should be noticed that the court in this process [of construing a will] is determining only a question of fact as to what the testator intended. Hence in cases of this nature precedents are of little value for no matter of law is

decided. This is probably what the courts mean when they say that 'no will has a brother.' "

Pertinent circumstances are: Miss Pinnix was not a Presbyterian, but a Baptist. She obviously had a deep affection for her brothers, living and deceased. She desired the construction of a lasting memorial to her deceased brother, a former sheriff of the county, from whom she inherited much of the property disposed of by her will. She was a resident of Reidsville, acquainted with the area in which she proposed that the church be built and with the inhabitants of that area and their needs.

Nothing in the will, the pertinent portions of which are quoted above, or in any other circumstances set forth in the record, indicates that Miss Pinnix had more than a casual interest in the general religious or charitable program of First Presbyterian or of the Presbyterian denomination. Her two-fold purpose was to establish a memorial to her brother at the specified location and to promote religious activities in this part of her native city. A reasonable inference is that she believed the inhabitants of this area of the city would remember affectionately their former sheriff and, for reasons not disclosed in the record, a Presbyterian church was more likely to be constructed and to succeed therein than a church of her own denomination would be. There is nothing in the will, or elsewhere in the record, to indicate the remotest possibility that she contemplated that First Presbyterian, itself, would remove to this location and occupy the proposed building. Thus, the design of the testatrix was not to confer a benefit upon First Presbyterian, but to use the good offices of First Presbyterian in the establishment in this area of a kindred but separate church.

G.S. 36-21 provides, "No gift, grant, bequest or devise, whether in trust or otherwise, to religious, educational, charitable or benevolent uses * * * shall be invalid by reason of any indefiniteness or uncertainty of the objects or beneficiaries of such trust * * * ." See also G.S. 36-23.1.

[3] It is true that the mere statement in the will of the purpose for which a bequest or devise is made does not show per se an intent to create a trust for the accomplishment of that purpose. *Y.W.C.A. v. Morgan, Attorney General, supra;* Bogert, Law of Trusts and Trustees, 2d Ed. § 46. On the other hand, the fact that the testator used words which, literally, express a request, hope, desire or recommendation that the property given will

**Wilson v. Church**

be used for a specified purpose does not necessarily preclude the establishment of a trust by such bequest or devise. As Chief Justice Gray said in *Hess v. Singler*, 114 Mass. 56, "It is a settled doctrine of Courts of Chancery that a devise or bequest to one person, accompanied by words expressing a wish, entreaty or recommendation that he will apply it to the benefit of others, may be held to create a trust if the subject and object are sufficiently certain." See also: 2 Pomeroy on Equity, p. 1015-1016; Scott on Trusts, 3d Ed, §§ 25.2 and 351; Bogert, Trusts and Trustees, 2d Ed, § 324.

The leading case on this question in North Carolina is *St. James v. Bagley, supra,* in which Justice Henry G. Connor, speaking for the majority of the Court, said, "The real test is whether the language is imperative or leaves the use and disposition of the property to the discretion of the donee." Likewise, Chief Justice Bigelow, in *Warner v. Bates,* 98 Mass. 274, said, "[T]o create a trust it must clearly appear that the testator intended to govern or control the conduct of the party to whom the language of the will is addressed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee." Professor Scott, in § 25.2 of his treatise on Trusts, 3d Ed, likewise says: "Where a testator uses language expressive of desire rather than of command, the question in each case is whether he intended to impose a legal duty upon the legatee to carry out the desired purpose, or whether he intended to leave the legatee free to carry it out or not as he should choose, even though the testator hoped that he would carry it out. In each case, in reaching its determination the court will examine the whole of the will, and examine it in the light of all the circumstances." See also, 54 AM JUR, Trusts, § 56; Annot., 107 ALR 896, 898.

Taking into account the facts that in the present case the testatrix was a member of a church of a different denomination and that her purpose was to establish a memorial to her brother, we are unable to conclude that her intent was to leave it to the discretion of the members or directing officers of First Presbyterian as to whether a new church would be built on the designated lot, or the lot and the proceeds of the other properties would be used for some other purpose deemed by them to be preferable.

The present case is readily distinguishable from *St. James v. Bagley, supra,* in which a conveyance was held absolute. There, the owner of property conveyed it to the Vestry and Wardens of the St. James Church by a deed which provided that the land was so conveyed "for the purpose of aiding in the establishment of a Home for Indigent Widows or Orphans *or in the promotion of any other charitable or religious objects* to which the property hereinafter conveyed may be appropriated by the said parties of the second part." (Emphasis added.) Quite clearly, the grantees were given a discretion as to what use they would make of the property.

*Y.W.C.A. v. Morgan, Attorney General, supra,* is also distinguishable from the present case. There, the husband of the testatrix had bequeathed to the Y.W.C.A. of Asheville a large sum of money, which bequest was conceded to have been absolute and free from a trust. His bequest was actually used by the legatee to construct a building which bore his name and which was used as a boarding house for young women. Thereafter, the testatrix left a bequest to the association "to be used by it exclusively for the upkeep and maintenance of Morehead House." Notwithstanding her use of the word "exclusively," this Court held the wife's bequest was an absolute gift to the association and did not create a trust. As we noted, the building which the testatrix desired to have kept up and maintained was the absolute property of the legatee and was used by it in carrying on the principal activity for which the legatee, itself, was organized. In the present case, on the contrary, the building contemplated by the testatrix was not for the use of the legatee, First Presbyterian, itself. In that case, the testatrix sought to benefit the legatee by relieving it of a financial burden incident to its carrying on its major function. In the present case, the testatrix did not seek to benefit the legatee but sought to aid a different group, and to memorialize her brother. To that end she sought the aid of the legatee and imposed a burden upon it. In that case, we observed, "Nor is there any limitation as to the expenditure of the principal of the fund." In the present case, the principal of the bequest and the subject of the devise were to be used in the construction of the new church.

[4] We conclude that it was not the intent of Miss Pinnix to give her property, real and personal, to First Presbyterian to be used by it for its own purposes and in its discretion, but to create a trust which was charitable in nature. Consequently, we

Wilson v. Church

find no error in the Superior Court's rejection of the belated claim of First Presbyterian to be the absolute owner of the property.

The second question to be considered is whether the trust established by the will of Miss Pinnix may be modified pursuant to the cy pres doctrine.

Pursuant to the consent judgment entered in this action in 1961, the lot intended by the testatrix to be the site of the proposed church and devised by her upon trust for that purpose has been sold and conveyed and the proceeds of its sale added to the trust fund. We are not called upon in this proceeding to determine whether the Superior Court had authority so to order. The validity of the conveyance is not here attacked. It is conceded by all the parties that the construction of a church upon that lot was not practicable at the time of the entry of the consent judgment and is not practicable now. It is also undisputed that neither First Presbyterian, the original trustee, nor the Presbytery, the substitute trustee, has commenced the construction of a church, as contemplated by the testatrix, either upon that lot or upon any other site, in compliance with the will or in compliance with the terms of the consent judgment. The substitute trustee states unequivocally that it does not contemplate undertaking such construction. Thus, the specific purpose of the testatrix in establishing this charitable trust has failed and there is no intent on the part of the substitute trustee to carry out such purpose.

The cy pres doctrine came into the law of North Carolina in 1967 when G.S. 36-23.2 became effective. The pertinent provision of the statute is:

"(a) If a trust for charity becomes illegal, or impossible or impracticable of fulfillment or if a devise or bequest for charity, at the time it was intended to become effective is illegal, or impossible or impracticable of fulfillment, and if the settlor or testator, *manifested a general intention to devote the property to charity,* any judge of the Superior Court may, on application of any trustee, executor, administrator, or any interested party, or the Attorney General, order an administration of the trust, devise or bequest as nearly as possible to fulfill the manifested general charitable intention of the settlor or trustee." (Emphasis added.)

**[5]** Under this doctrine, the Superior Court does not have authority to modify every charitable trust when it becomes impracticable to carry out the original purpose of the settlor or testator. Such power is conferred upon the Superior Court only where the instrument creating the trust, interpreted in the light of all the circumstances known to the settlor or testator, manifests a "general intention to devote the property to charity." This is indispensable to a proper application of the cy pres doctrine under this statute. *Y.W.C.A. v. Morgan, Attorney General, supra.* It is equally so in those jurisdictions where the cy pres doctrine developed without legislative action. Scott on Trusts, 3d Ed, § 399; Bogert, Trusts and Trustees, 2d Ed, § 436; 15 AM JUR 2d, Charities, § 135; Annot., 74 ALR 671.

The rule is thus stated by Professor Scott:

"It is not true that a charitable trust never fails where it is impossible to carry out the particular purpose of the testator. In some cases, as we shall see, it appears that the accomplishment of the particular purpose and only that purpose was desired by the testator and that he had no more general charitable intent and that he would presumably have preferred to have the whole trust fail if the particular purpose is impossible of accomplishment. In such a case the cy pres doctrine is not applicable."

**[6]** Thus, again, we are required to return to the will of Miss Pinnix and to interpret it in the light of the circumstances. The cy pres doctrine "may not be used to turn a narrow and particular charitable intent into a general charitable intent." Bogert, Trusts and Trustees, § 431. Here, again, no two cases are exactly alike since it is the intent of the particular testator—a question of fact, not law—which is to be determined. Consequently, it is not possible to reconcile all of the decisions of the various courts, even where the circumstances are quite similar.

In *Rhode Island Hospital Trust Co. v. Williams,* 50 R.I. 385, 148 A 189, 74 ALR 664, the Court said, "If a gift to a specific charitable corporation lapses it may not be applied cy pres unless from the will or extrinsic evidence the Court may find a general charitable intent *beyond that shown by the gift to the specific charitable corporation.*" (Emphasis added.) There, such a general charitable intent was found and the doctrine was applied. In *Teele v. Bishop of Derry,* 168 Mass. 341, 47 N.E. 422, a bequest to trustees for the purpose of purchasing

a lot and building a chapel in a village in Ireland, to be used forever for the purposes of public worship under the auspices of a Roman Catholic Church, was found to be impracticable of fulfillment because the population of the place was too small and the people too poor to maintain such chapel. It was held that the purpose of the testatrix was limited to the purchase of a lot and the building of a chapel and no general intent to advance religion in the designated area could be inferred. Consequently, the cy pres doctrine was not applied. In 15 AM JUR 2d, Charities, § 136, it is said, "[I]f the gift is specifically for a memorial building to be erected for a designated purpose in the donor's home community, it is difficult to discover any broader charitable intention which can sustain its cy pres application to a different purpose."

[7]   Here, the testatrix appears clearly to have had in mind a memorial to her brother in a specified part of her home community and the benefit of the inhabitants of that portion of the community through the establishment therein of a new church. Her charitable intent was specific and limited, both as to locations and as to the nature of the benefit. Consequently, we find no error in the ruling of the Superior Court that the cy pres doctrine has no application to this case.

[8]   The third and final question to be determined is, Are the heirs of Miss Pinnix necessary parties to this proceeding?

In *St. James v. Bagley, supra,* the owner of land conveyed it to the Vestry and Wardens of St. James Church who, in turn, contracted to sell and convey to Bagley. The proceeding was a controversy without action to determine whether such grantee held the property in trust or could convey a good, unencumbered title to the defendant. The Court held, Chief Justice Clark dissenting on this point, that the heirs of the original grantor were not necessary parties.

In *Shannep v. Strong,* 160 Kan. 206, 160 P. 2d 683, suit was brought against the trustee of a testamentary charitable trust by the residuary devisee, who contended that the trust failed when the local church, which was the beneficiary, disbanded and that the property thereupon passed to her. The Court held that the cy pres doctrine being inapplicable, the property would have passed to the heirs of the testator had there been no residuary clause, but, since there was a residuary clause, it passed to the residuary devisee.

The Restatement of the Law, Trusts, 2d, § 411, says that the following is the general rule where an express trust fails:

> "Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee shall hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality."

In Comment c upon this rule the Restatement says, "If real and personal property is devised or bequeathed upon a trust which fails and there is a provision in the will effectively disposing of the residue of the testator's real and personal property, the devisee or legatee, if he takes title to the property, holds it upon a resulting trust for the residuary devisee or legatee." Comment k states, "The rule stated in this Section is applicable not only where an intended trust fails at the outset but also where a trust is created which subsequently fails."

There is authority to the effect that if a testamentary trust never becomes operative the provision lapses and the property passes to the residuary legatee or devisee, if the will contains a residuary clause, but if the trust once becomes operative and then fails, the resulting trust is for the benefit of the testator's heirs. *Industrial National Bank v. Drysdale,* 84 R.I. 385, 125 A 2d 87, 62 A.L.R. 2d 756; Annot., 62 A.L.R. 2d 763; 15 AM JUR 2d, Charities § 128. We find no basis for this distinction. If the creator of the express trust were still living, the resulting trust would be for his benefit. The question is, Who is his successor in interest?

Where the will creating the trust contains a residuary clause, as here, it is apparent that the creator of the trust favored the residuary legatee or devisee over his general heirs at law. This is especially true where, as here, the residuary legatee and devisee was a close relative for whom the testator obviously had affection. Cases in which the trust which failed was, itself, created by a residuary bequest or devise are distinguishable. See: *Waterbury Trust Co. v. Porter,* 131 Conn. 206, 38 A 2d 598; *Rohiff v. German Old People's Home* (Neb.), 10 N.W. 2d 686.

We find in this record no basis for doubt that Miss Pinnix, after making the bequests and devises to First Presbyterian,

and other dispositions of her properties, intended by the residuary clause to provide that all other property interests which she might have, whether known to her or not, would pass to her surviving brother, the residuary legatee and devisee. He, in turn, named the original plaintiff in this action as his residuary legatee and devisee, thereby passing his interest to her. The present plaintiffs are her successors in interest by virtue of the residuary clause in her will.

We find no error in the conclusion of the Superior Court that the heirs at law of Susan E. Pinnex are not necessary parties to the present proceeding.

No error.

Justice SHARP did not participate in the consideration and decision of this case.

Justice BRANCH dissenting.

I am of the opinion that the property devised and bequeathed to the First Presbyterian Church of Reidsville by the will of Susan E. Pinnix created estates in fee simple, unencumbered by a trust.

In *Williams v. Thompson*, 216 N.C. 292, 4 S.E. 2d 609, certain real property was devised to the Methodist Episcopal Church, "to be used by the stewards or legal representatives of the said church in the Town of Plymouth, as a parsonage for the minister and for no other purpose . . . . " The Court held that this will devised a fee in the land and reasoned that the effect of the language in the will was only to express the wish of the testatrix as to the future use of the land.

In *Hall v. Quinn*, 190 N.C. 326, 130 S.E. 18, certain lands were conveyed to the Trustees of the James Sprunt Institution, an institution controlled by the Wilmington Presbytery, "to be used for the purposes of education, and for no other purposes." This Court held that the language of this conveyance created an estate in fee.

In the landmark case of *St. James v. Bagley*, 138 N.C. 384, 50 S.E. 841, a deed was executed to the Vestry and Wardens of St. James Church containing the following language:

" . . . the said parties of the first part, for the purpose of aiding in the establishment of a Home for Indigent

Widows or Orphans or in the promotion of any other chari-
table or religious objects to which the property hereinafter
conveyed may be appropriated by the said parties of the
second part, . . . . do by these presents grant, bargain,
and sell to the said parties of the second part, . . . . "

This Court held that such language did not create a trust,
and, in part stated:

" . . . By all of the canons of construction and the rules
laid down by the courts for ascertaining the intention of
the donor, we are brought to the conclusion that no trust
is created by the language in this deed. . . . "

It is recognized, however, that no particular words are
necessary to create a trust if the intent to create a trust is evi-
dent. Ultimately, construing a will involves finding the intent
of the testator, and when found, giving this intent effect unless
contrary to public policy or some rule of law. *Y.M.C.A. v. Mor-
gan*, 281 N.C. 485, 189 S.E. 2d 169.

Examination of the provisions of this will in light of the
circumstances known to the testatrix reveals an intent on her
part to memorialize her brother. Such examination, however,
reveals no intent to restrict the gifts or any indication that
the testatrix wished to abandon her desire to commemorate the
memory of her brother if it could not be accomplished by the
erection of a church on the site indicated in the will.

The will of Susan E. Pinnix was obviously drawn by a
competent lawyer. Yet, the pertinent items of the will do not
contain language generally used by the legal profession in creat-
ing a trust. Further, the scrivener could have easily made the
bequests and devises defeasible upon failure to perform *condi-
tions* which testatrix might have imposed. The will, nevertheless,
contains no clause of forfeiture upon conditions broken or clause
of reentry.

I believe that the testatrix intended to devise and bequeath
the property to the First Presbyterian Church, Reidsville, North
Carolina, in fee simple, to express the motive which prompted
her to make the gifts, and to indicate her *wishes* concerning
the future use of the property.

With knowledge of the primary motive of the testatrix, the church, in all probability, would use the property to memorialize her brother in some appropriate way.

Finally, we note that the Consent Judgment entered in the Superior Court of Rockingham County on 6 October 1961 did not attempt to adjudicate the rights of the parties or to construe the will of Susan E. Pinnix. This judgment did no more than continue the cause for a period of ten years and provide that in the event defendants did not within that time erect a church in memory of M. F. Pinnix within a radius of five miles of the Burton Street property, that the plaintiff be "authorized by motion in this cause to reaffirm her claim to the corpus of the trust." In the present action, plaintiffs seek "to reaffirm their claims," if any they have.

I vote to reverse and remand to Rockingham Superior Court for entry of judgment declaring the First Presbyterian Church of Reidsville to be the absolute owner of all of the property, both real and personal, which was devised or bequeathed to it by the will of Susan E. Pinnix.

Chief Justice BOBBITT joins in this dissenting opinion.