TRUSTEES OF WAGNER TRUST v. BARIUM SPRINGS HOME FOR CHILDREN

[102 N.C. App. 136 (1991)]

THE TRUSTEES OF THE L. C. WAGNER TRUST, PLAINTIFFS v. BARIUM SPRINGS HOME FOR CHILDREN, INC.; DAVIS HOSPITAL FOUNDATION, INC.; MITCHELL COMMUNITY COLLEGE; GARDNER-WEBB COLLEGE; JOSEPH FORESTER DAVIS; JOHN C. DAVIS; LOUIS M. DAVIS; PATRICIA DAVIS HINTON; MARY DAVIS BROYHILL (CRAIG); NELL DAVIS McCOY; GEORGE C. DAVIS; DAVIS HOSPITAL, INC.; OLIVIA BROWN THOMAS; H. BROWN KIMBALL AND JOHN H. GRAY III, DEFENDANTS

No. 9022SC402

(Filed 19 March 1991)

1. **Trusts § 4 (NCI3d) — charitable trust—determination of beneficiary**

The trial court erred in a declaratory judgment action to determine the appropriate distribution of the trust funds by failing to find and conclude that Barium Springs is the proper beneficiary where L. C. Wagner executed a will setting up a trust the income of which was to be used in promoting Davis Hospital, Inc. following the death of his wife; should Davis Hospital, Inc. cease to operate as a hospital or should two-thirds of the trustees deem it inadvisable to supply further funds, the trust funds were to be used in the trustees' discretion for the promotion of the Barium Springs Orphanage; Davis Hospital ceased to operate in 1983; the proceeds of the sale of its assets were paid over to the Davis Hospital Foundation, a nonprofit corporation which included in its purposes the promotion of nursing education; the trustees of the Wagner Trust passed a resolution stating that Davis Hospital was no longer operating a hospital, that the Barium Springs Orphanage was no longer operating as an orphanage, and that the trust income should be paid to the Davis Hospital Foundation; and the court erroneously applied the *cy pres* doctrine, concluding that the intention of L. C. Wagner could best be preserved by directing the trustees to apply the income in their discretion for the Nursing Education Programs of Mitchell Community College and Garner-Webb College. The testator's intention was clearly that the funds were to go to Barium Springs in the event the hospital ceased to operate and the will does not specify any condition requiring the institution to continue to function in the identical capacity in which it operated as of the death of the testator.

**Am Jur 2d, Charities § 160.**

**2. Trusts § 4.1 (NCI3d) — charitable trust—cy pres doctrine —inapplicable**

The trial court erred in a declaratory judgment action to determine the proper beneficiary of a trust by finding and concluding that the testator manifested a general charitable intent and by applying the *cy pres* doctrine. Although it was contended that item 5 of the will evidenced a general charitable intent to aid sick, injured and suffering humanity, the testator states in item 5 his intention to aid the Davis Hospital specifically and his motive that the promoting of the hospital will aid sick, injured and suffering humanity, not any general charitable intent. Nothing in the will indicates more than that the testator wanted to promote Davis Hospital, and in addition, the testator provided for the possibility of trust failure by specifying an alternate beneficiary which has not become impracticable or impossible. N.C.G.S. § 36A-53(a).

**Am Jur 2d, Charities §§ 162, 163.**

**3. Trusts § 8 (NCI3d) — trust income—constructive delivery**

In a declaratory judgment action to determine the proper beneficiary of a trust, the trial court erred in concluding that the trust was mandatory, did not err by finding and concluding that the trustees had constructively distributed income which was not actually paid to Davis Hospital and which was left in the trust to be reinvested by the trustees, and erred by concluding that income not actually paid to Mrs. Wagner during her lifetime was constructively delivered.

**Am Jur 2d, Charities §§ 139, 156.**

**4. Trusts § 10.3 (NCI3d) — capital gains—constructively delivered**

The trial court did not err in concluding that capital gains from trust principal had been constructively distributed to Davis Hospital where, although the trial court incorrectly concluded that the testator intended income to include capital gains, the trust was discretionary and the evidence supported the findings of fact and the conclusion that the trustees in their discretion constructively distributed the capital gains.

**Am Jur 2d, Charities §§ 139, 156.**

**5. Trusts § 10 (NCI3d) — termination of trusts — existence of alternate beneficiary**

A charitable trust did not fail and the funds did not pass to the next of kin where the alternate beneficiary, Barium Springs, still existed.

**Am Jur 2d, Charities §§ 155, 160.**

Judge GREENE concurs in part and dissents in part.

APPEAL by defendants from judgment entered 28 November 1989 by *Judge James C. Davis* in IREDELL County Superior Court. Heard in the Court of Appeals 6 December 1990.

On 26 August 1942, L. C. Wagner executed a will setting up a trust. The income from the trust was to be paid to his wife during her lifetime. Following her death, the trust income was to be used in promoting Davis Hospital, Inc. The will in part provides:

ITEM 5. It is my will that my Trustees heretofore and above named and appointed shall use the income from all my property for the purpose of promoting the welfare and, if possible, the perpetuation of the Davis Hospital, Incorporated. . . . If at any time it shall be made to appear to the satisfaction of the Trustees herein named or their successors that any of the funds, in their hands belonging to this trust, is needed or can be used to advantage to promote and perpetuate said Hospital and aid sick, injured and suffering humanity, either of the white or colored race, then said Trustees are hereby authorized to use such sum or sums either with the income or principal of said Trust Fund as in the discretion of a two-third majority of said Board of Trustees shall be deemed wise and expedient.

ITEM 6. That in the event the said Davis Hospital, Incorporated, shall for any cause cease to operate and function as a hospital or that the conditions of said hospital should become such that in the opinion of a two-third majority of the trustees herein named that it would be inadvisable to supply further funds for that cause then and in that event the said Trustees shall use any funds then remaining unexpended as in their discretion may seem best for the promotion of the Barium Springs Orphanage at Barium Springs, North Carolina. . . .

L. C. Wagner died 5 July 1946, and his wife, Mary Wagner, died 2 July 1956. On or about 30 April 1983, Davis Hospital, Inc. sold all of its assets, and on or about 1 May 1983 it ceased to operate the hospital. The proceeds of the sale were paid over to Davis Hospital Foundation, Inc., a nonprofit corporation for which one of its purposes is to promote nursing education. On 11 October 1984, Davis Hospital, Inc. filed Articles of Dissolution.

In December 1983, the Trustees of the Wagner Trust (hereinafter "Trustees") passed a resolution stating that Davis Hospital, Inc. was no longer operating a hospital; that the Barium Springs Orphanage, the alternate beneficiary in the event the hospital ceased to operate, was no longer operating as an orphanage; therefore, the trust income should be paid to the Davis Hospital Foundation, Inc. Davis Hospital, Inc. and Davis Hospital Foundation, Inc. paid all income received from the Trustees from May 1983 to June 1985 to Gardner-Webb College, which had been operating since September 1984 the Davis School of Nursing of Gardner-Webb College, Inc., and leasing buildings which formerly housed the Davis Hospital School of Nursing for its Statesville campus. Mitchell Community College, which had participated in educating nurses jointly with Davis Hospital, continued to operate a joint program with Gardner-Webb.

The Trustees brought this declaratory judgment action seeking a determination as to the appropriate distribution of the funds. The Trustees named as defendants Barium Springs Home for Children, Inc., Davis Hospital Foundation, Inc., Mitchell Community College, Gardner-Webb College, and the heirs of L. C. Wagner, including Mary Davis Broyhill Craig, who seeks a share of the trust as an heir of L. C. Wagner. On 20 December 1988, a motion was granted to add as defendants the heirs of Mary Wagner. Davis Hospital, Inc. was also made a party.

On 4 August 1988, a motion by Barium Springs Home for Children, Inc. to strike Mitchell Community College and Gardner-Webb College as parties defendant was denied. On 3 November 1988, summary judgment motions filed by Barium Springs Home for Children, Inc., Mitchell Community College, and Mary Davis Broyhill Craig were denied.

The parties stipulated that the reference in the will to "the Barium Springs Orphanage at Barium Springs, North Carolina" referred to the institution at Barium Springs owned and operated

by The Regents of the Orphans' Home which changed its name in 1961 to Barium Springs Home for Children.

Following the first hearing, the Trustees moved to reopen for additional evidence on the grounds that they had discovered since the first hearing that the income tax returns from 1956 to 1983 showed that all the trust income had been distributed to Davis Hospital, Inc. though Davis Hospital, Inc. had permitted part of the income to remain in the trust in order that it be reinvested by the Trustees. Over Barium Springs' objection, the motion was granted.

The trial court stated in its findings of fact:

49. The purpose for which Barium Springs Orphanage existed in 1946 was the maintenance, care and support of orphans. The purpose for which Barium Springs Home for Children, Inc. exists today and existed in 1983 is to minister to the needs of troubled youth . . . and to offer certain family life services. In 1983 and to the present, only a small percentage of the clientele . . . have been single or double orphans. . . .

The trial court also found that in the 1960's Barium Springs Home for Children closed its schools; the children ceased working on its farms and in its shops; and by 1968, it "was no longer operating as an institution for purely custodial care in a similar setting to what used to be an orphanage" but instead was operating a "day-care program for normal children of the neighborhood from while [sic] families." In 1974, Barium Springs Home for Children amended its charter substituting the words "for the care, control, education, maintenance and support of indigent or orphan children" with "the purpose of Barium Springs Home for Children is a multi-function family service agency." The trial court further stated that in 1977 it "ceased being an orphanage . . . and began a program of working exclusively with troubled, alienated and disturbed adolescents," for which treatment was not provided free of charge. The trial court also stated that the institution "is not now and has not been since at least January 1, 1977, an orphanage." The trial court found that the portion of the the trust income which had not been actually paid to Davis Hospital had been reinvested for the hospital by the Trustees.

The trial court concluded that the trust is a mandatory trust, that the will manifested a general charitable intent, that the disposi-

TRUSTEES OF WAGNER TRUST v. BARIUM SPRINGS HOME FOR CHILDREN

[102 N.C. App. 136 (1991)]

tion of the trust funds became impracticable once Davis Hospital ceased to exist, that the provision designating Barium Springs as beneficiary had become impracticable on the grounds that Barium Springs Orphanage did not exist, and that the *cy pres* doctrine applies. The trial court further concluded that Mitchell Community College and Gardner-Webb College are the continuation of the Davis Hospital Nursing Program and that the intention of L. C. Wagner "can best be preserved . . . by directing that the trustees of said Trust apply the income and so much of the principal as in their discretion is appropriate for the Nursing Education Programs of Mitchell Community College and Gardner-Webb College."

The trial court awarded Davis Hospital, Inc. approximately 1.7 million dollars which included capital gains which the court determined should be considered part of the income actually and constructively received by Davis Hospital. The trial court further ordered that all income from the remaining trust funds and any principal in the Trustees' discretion be distributed annually to Mitchell Community College and Gardner-Webb College.

From this judgment, defendant Barium Springs Home for Children, Inc. and defendant Mary Craig appeal.

*Womble Carlyle Sandridge & Rice, by Dewey W. Wells, Elizabeth L. Quick, and Mark E. Richardson III, for defendant-appellant Barium Springs Home for Children.*

*Anderson & McLamb, by Sheila K. McLamb, for defendant-appellant Mary Craig.*

*McElwee, McElwee, Cannon & Warden, by E. Bedford Cannon, for defendant-appellees Davis Hospital, Inc. and Davis Hospital Foundation, Inc.*

*Hamrick, Mauney, Flowers & Martin, by Fred Flowers, for defendant-appellee Gardner-Webb College.*

*Pope, McMillan, Gourley, Kutteh & Parker, by William P. Pope, for defendant-appellee Mitchell Community College.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by Walter F. Brinkley, for North Carolina Child Care Association, Inc., amicus curiae.*

TRUSTEES OF WAGNER TRUST v. BARIUM SPRINGS HOME FOR CHILDREN

[102 N.C. App. 136 (1991)]

ORR, Judge.

Defendant Barium Springs Home for Children, Inc. (hereinafter "Barium Springs") raises four issues on appeal contending that the trial court erred in the following respects: (1) failing to find and conclude that Barium Springs is the proper beneficiary under the trust and considering evidence regarding changes at Barium Springs, (2) considering evidence regarding the testator's intent and applying the *cy pres* doctrine, (3) determining the Trustees made constructive delivery to Davis Hospital of the undistributed trust income, and (4) ruling that capital gains should be treated as income and that capital gains had been constructively delivered to Davis Hospital.

In reviewing a declaratory judgment, a trial court's findings of fact

> are conclusive if supported by any competent evidence; and a judgment supported by such findings will be affirmed, even though there is evidence which might sustain findings to the contrary, and even though incompetent evidence may have been admitted. The function of our review is, then, to determine whether the record contains competent evidence to support the findings; and whether the findings support the conclusions. [Citation omitted.]

*Nationwide Mut. Ins. Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475, *disc. review denied*, 303 N.C. 315, 281 S.E.2d 652 (1981).

In interpreting and construing the terms of a will,

> [t]he cardinal rule . . . is that the intention of the maker be ascertained if possible. The intention which controls is that which is manifest, expressly or impliedly, from the language of the will. Where the intention is clearly and consistently expressed there is no need for judicial interpretation, and the court must first examine the will and, if possible, ascertain its meaning without reference to rules or canons of construction. Only where there is ambiguity or uncertainty is it proper for the court to take into consideration the established rules or canons for the construction of wills. [Citations omitted.]

*First Union Nat'l Bank v. Moss*, 32 N.C. App. 499, 503, 233 S.E.2d 88, 91-92, *disc. review denied*, 292 N.C. 728, 235 S.E.2d 783 (1977).

TRUSTEES OF WAGNER TRUST v. BARIUM SPRINGS HOME FOR CHILDREN

[102 N.C. App. 136 (1991)]

I.

[1] Barium Springs in its first assignment of error contends that the trial court erred in failing to find and conclude that Barium Springs is the proper beneficiary of the trust on the grounds that the will itself and the stipulated facts establish as a matter of law that Barium Springs is entitled to benefit from the trust. Barium Springs in its fourth assignment of error contends that the trial court erred in considering evidence regarding the changes at Barium Springs and finding and concluding "the alternative plan [with Barium Springs as beneficiary] was impracticable or impossible."

Based on the evidence, the trial court made findings of fact that the purpose, function, and services of Barium Springs have changed and that "Barium Springs Orphanage does not now exist." The trial court also quoted the Trustees' resolution stating that "Barium Springs Orphanage is no longer in existence as an orphanage." The trial court made further findings of fact and corresponding conclusions of law that "[e]ven if Barium Springs Orphanage does exist," the testator's intention regarding Barium Springs is "impossible or impracticable to fulfill."

"Where the language employed by the testator is plain and its import is obvious, . . . the words of the testator must be taken to mean exactly what they say." *McCain v. Womble*, 265 N.C. 640, 644, 144 S.E.2d 857, 860 (1965) (quoting *Elmore v. Austin*, 232 N.C. 13, 18, 59 S.E.2d 205, 209 (1950)).

"If a will is sufficiently distinct and plain in its meaning as to enable the court to say that a particular person is to take, and that a particular thing passes, that is sufficient; and it must be construed upon its face without resorting to extraneous methods of explanation to give it point. Any other rule would place it practically within the power of interested persons to *make* a testator's will, so as to meet the convenience and wishes of those who might claim to take under it."

*Wachovia Bank & Trust Co. v. Wolfe*, 243 N.C. 469, 474, 91 S.E.2d 246, 251 (1956) (quoting *McDaniel v. King*, 90 N.C. 597, 602 (1884)).

Davis Hospital Foundation, Inc., Mitchell Community College, Gardner-Webb College, and Davis Hospital, Inc. (hereinafter "appellees") argue that Barium Springs is not entitled to benefit from the trust as alternate beneficiary because an orphanage at Barium Springs no longer exists. Appellees argue the will is unclear on

the following grounds: "(1) the testator's named reference does not match the name used by the institution at any time in its history and (2) even allowing the reference to embrace the institution as currently named, the activities of the home have changed dramatically since the will's execution."

Regarding the name of the institution, the Trustees in their complaint stated that Barium Springs "is owned and operated by Barium Springs Home for Children, Inc., which, except for its name, is the same corporation which owned and operated Barium Springs Orphanage at the time of the death" of the testator. Significantly, the parties stipulated that the reference to the institution in the will referred to the Barium Springs Home for Children, Inc.

Based on the will itself, which is sufficiently plain in meaning, and the parties' stipulations, the testator's intention is clear — in the event the hospital ceased to operate, the funds were to go to Barium Springs, which was clearly identified by the testator in his will. Furthermore, the will does not specify any condition requiring the institution to continue to function in the identical capacity in which it operated as of the death of the testator. Nonetheless, the trial court found that Barium Springs no longer exists under the will by apparently implying a condition that it not deviate from its precise function at the time of the execution of the will such that the trust became "impossible or impracticable."

In *In Re Estate of Staab*, 173 N.W.2d 866 (Iowa 1970), one of the residuary legatees was St. Monica's Home, which at the time of the execution of the will served as a home for unwed mothers and children under age four, but at the time of the testator's death, it operated as a retirement home while retaining its corporate identity. The court stated that St. Monica's Home was still in existence, and if the testator had intended the funds to be used only for a home for unwed mothers and children under age four, she should have clearly stated so in the will. *Id.* at 871-72.

In *First Am. Nat'l Bank v. DeWitt*, 511 S.W.2d 698 (Tenn. Ct. App. 1972), the will provided that part of the trust funds would go to the trustees of the "Protestant Orphanage of Nashville, Tennessee" if it was still in existence. The will had no requirement as to how the funds were to be used. The "Nashville Protestant Orphans' Asylum" provided residential care for needy girls and was in existence at the time of the execution of the will. In 1957, due to changing needs, the institution stopped providing such care,

and in 1958 amended its charter and changed its name to the "Protestant Orphanage Foundation, Inc." and began providing funds for a day care center for retarded children. Since 1963, it has operated the day care center. The court held that the institution named in the will had not ceased to exist. *Id.* at 707.

Here, as we stated above, there is no express condition in the will requiring that Barium Springs remain the same, and we will not imply such a condition. We recognize the consequences that would result from implying such a condition to charitable trusts so that a charitable organization would be required to function in the exact same capacity as it did at the time the trust was created. First, charitable institutions would be unable to adapt to the changing needs of society and would be forced to forego any changes in services or functions. Second, by implying such a condition, the numerous wills and trusts drafted prior to this case would have to be revised in order to comply with the testator's intent. Finally, such an implied condition would lead to difficult determinations as to how much change is permitted and whether the charitable organization has changed to such an extent that it is no longer the charitable institution the testator intended to benefit. We do not wish to resort to such line-drawing. Thus, we conclude that the trial court erred in failing to find and conclude Barium Springs is the proper beneficiary.

II.

[2] Barium Springs in its second assignment of error contends that the trial court erred in considering extrinsic evidence regarding the testator's intent and in concluding the testator manifested a general charitable intent. In its third assignment of error, Barium Springs contends that the trial court erred in considering evidence regarding the history of the nursing programs at Davis Hospital, Gardner-Webb College, and Mitchell Community College, and in applying the *cy pres* doctrine.

The equitable doctrine of *cy pres* "is a saving device applied to charitable trusts by the courts 'to direct the application of the property to a charitable purpose as near as possible to the precise objective of the donor,' when his precise intention cannot be effectuated." *Board of Trustees of UNC-CH v. Heirs of Prince*, 311 N.C. 644, 647, 319 S.E.2d 239, 242 (1984) (quoting E. Fisch, D. Freed, and E. Schachter, *Charities and Charitable Foundations* § 561 (1974) ).

In North Carolina, the *cy pres* doctrine is applied pursuant to N.C. Gen. Stat. § 36A- 53(a) (1984) which provides in relevant part:

> If a trust for charity is or becomes illegal, or impossible or impracticable of fulfillment or if a devise or bequest for charity, at the time it was intended to become effective is illegal, or impossible or impracticable of fulfillment, and if the settlor, or testator, manifested a general intention to devote the property to charity, any judge of the superior court may, on application of any trustee . . . order an administration of the trust . . . as nearly as possible to fulfill the manifested general charitable intention of the . . . testator. . . . This section shall not be applicable if the . . . testator has provided . . . for an alternative plan in the event the charitable trust . . . is or becomes illegal, impossible or impracticable of fulfillment. However, if the alternative plan is also a charitable trust . . . and such trust . . . fails, the intention shown in the original plan shall prevail in the application of this section.

Thus, the statute applies only when three conditions have been met: (1) the testator manifested a general charitable intent; (2) the trust has become illegal, impossible, or impracticable; (3) the testator has not provided for an alternative disposition if the trust fails. *Prince*, 311 N.C. at 647, 319 S.E.2d at 242.

Here the trial court stated in its findings of facts that "Barium Springs Home for Children is not now and has not been since at least January 1, 1977, an orphanage" and that "Barium Springs Orphanage" and Davis Hospital no longer exist. It further stated that "[e]ven if Barium Springs Orphanage does exist, it is impossible or impracticable to fulfill the intention of the testator"; that he manifested "a general intention to devote his property to charity"; and that, therefore, N.C. Gen. Stat. § 36A-53 applies.

Based on its findings, the trial court concluded:

13. GS 36A-53 provides that if a trust for charity becomes impossible or impracticable of fulfillment, and if the testator manifested a general intention to devote the property to charity, then any Judge of the Superior Court may order an administration of the trust "as nearly as possible to fulfill the manifested general charitable intention" of the testator. The Statute further provides that when the testator provides an alternative plan which is also charitable and such charity also

fails, then the general intention shown in the original plans shall prevail.

14. The Will of L. C. Wagner manifested general charitable intention. It became impracticable to fulfill on the termination of Davis Hospital. The alternative plan was impracticable or impossible to fulfill because Barium Springs Orphanage did not then exist.

The trial court further concluded that the two colleges "continue the existence of one of the two primary purposes of Davis Hospital" through their nursing programs and that the testator's intent "can best be preserved and perpetuated" through distributions of the trust funds to these institutions.

The first condition has not been met, and the trial court erred in finding and concluding that the testator manifested a general charitable intent. " 'If a gift to a specific charitable corporation lapses it may not be applied cy pres unless from the will or extrinsic evidence the Court may find a general charitable intent *beyond that shown by the gift to the specific charitable corporation.'* " *Wilson v. First Presbyterian Church*, 284 N.C. 284, 300, 200 S.E.2d 769, 779 (1973) (quoting *Rhode Island Hospital Trust Co. v. Williams*, 50 R.I. 385, 390, 148 A. 189, 191 (1929) ).

Appellees contend that item 5 of the will evidences such a general charitable intent to "aid sick, injured and suffering humanity." That section states in part:

If at any time it shall be made to appear to the satisfaction of the Trustees . . . that any of the funds . . . is needed or can be used to advantage to promote and perpetuate said Hospital and aid sick, injured and suffering humanity, . . . then said Trustees are hereby authorized to use such sum or sums . . . .

In item 5, the testator states his intention to aid the Davis Hospital specifically and his motive that the promoting of the hospital will "aid sick, injured and suffering humanity" not any general charitable intent. Nothing in the will indicates more than that the testator wanted to promote Davis Hospital. In the first part of item 5, he states his purpose "of promoting the welfare and, if possible, the perpetuation of Davis Hospital."

In item 11 of the will, the testator specifies his requests of his trustees including "it is my aim to be a contributor for [Davis Hospital's] perpetuation." He further states that:

> I request my Trustees to encourage public sentiment to aid in securing a suitable building for the care of colored patients. . . . Under this plan, if necessary, I would expect you to apply a reasonable donation from my estate to aid in said suitable building, though my hope is that said estate be kept as nearly intact as it is humanly possible for the sole purpose of maintenance, thereby to aid in the perpetuity of the Davis Hospital, Incorporated. It is my further request that a reasonable percentage of my estate will be used for the care of the needy among our colored friends . . . .

Additional evidence of the testator's specific intent to aid Davis Hospital is found in item 12:

> It is my final parting wish to my Trustees . . . to use every effort and exhaust every means humanly possible to perpetuate the Davis Hospital, Incorporated, located on West End Avenue in the City of Statesville, N.C., for the treatment of sick and injured humanity. This hospital was organized and has been carried on through the years by the effort and services of my nephew, Dr. James W. Davis, and it is my sincere wish that this noble work begun by him shall be carried on throughout the years to come.

In addition, the testator provided for the possibility of trust failure by specifying an alternate beneficiary. "The failure, or conscious omission, to provide for the possibility of trust failure is further evidence of the [testator]'s general charitable intentions." *Prince*, 311 N.C. at 649, 319 S.E.2d at 243.

We recognize "[t]he fact that a testator bequeathed practically all of his estate for charitable purposes is sound evidence denoting that he had a general charitable intention." *Id.* However, here the will itself clearly reflects only the testator's specific intent to aid Davis Hospital, and there is no other evidence to the contrary. Thus, the trial court's finding that the testator manifested a general charitable intent was not supported by the evidence, and the trial court erred in finding and concluding that the *cy pres* statute was applicable.

Although the Davis Hospital has ceased to operate and thus in that respect the trust is "impracticable," the third condition has also not been met since the testator did make an alternative disposition in favor of Barium Springs which, as we determined above, has not become impracticable or impossible. Thus, for the reasons above, we conclude that the trial court erred in applying *cy pres*.

## III.

[3] Barium Springs next contends that the trial court erred in determining that the Trustees made constructive delivery to Davis Hospital of the trust income which had not actually been paid to the hospital. Barium Springs argues that the trust is mandatory only regarding the identity of the beneficiary but discretionary regarding the distribution of income.

The trial court stated in its findings of fact that during the time Dr. Hoyle Whiteside served as a trustee of the trust (1972 to the present), "the only discretion the Trustees of the Wagner Trust possessed with regard to payments to Davis Hospital, Inc. was as to the timing of disbursements." Further, the trial court stated that the Trustees "had no discretion as to the beneficiaries of the income or as to the amount to be distributed." Based on its findings, the trial court concluded that the trust is mandatory and "[t]he only discretion which the Trustees of the trust have is discretion as to the time of distribution of funds."

In *Lineback v. Stout*, 79 N.C. App. 292, 296, 339 S.E.2d 103, 106 (1986), we stated:

A discretionary trust is a trust wherein the trustee is given the |discretion to determine whether and to what extent to pay or apply trust income or principal to or for the benefit of a beneficiary. Under a true discretionary trust, the trustee may withhold the trust income and principal altogether from the beneficiary and the beneficiary, as well as the creditors and assignees of the beneficiary, cannot compel the trustee to pay over any part of the trust funds. A trust wherein the trustee has discretion only as to the time or method of making payments to or for the benefit of the beneficiary is not a true discretionary trust. [Citations omitted.]

Regarding the mandatory or discretionary powers of a trustee, our Supreme Court stated:

> A power is mandatory when it authorizes and commands the trustee to perform some positive act. A power is discretionary when the trustee may either exercise it or refrain from exercising it, . . . or when the time, or manner, or extent of its exercise is left to his discretion. [Citations omitted.]

*Woodard v. Mordecai*, 234 N.C. 463, 471, 67 S.E.2d 639, 644 (1951).

To determine if a trustee's power is mandatory or discretionary, we must look to the

> intent of the settlor as evidenced by the terms of the trust. The intent of a settlor is determined by the language he chooses to convey his thoughts, the purposes he seeks to accomplish and the situation of the parties benefitted by the trust. Use by the settlor of words of permission or option, or reference to the discretion of the trustee, in describing the trustee's power, indicates that the settlor intended that the power be discretionary, whereas the use of directive or commanding language indicates that a mandatory power was intended. [Citations omitted.]

*Lineback*, 79 N.C. App. at 297, 339 S.E.2d at 107.

Although item 5 states that the Trustees "shall use the income . . . for the purpose of promoting the welfare and, if possible, the perpetuation of the Davis Hospital," we conclude that this language merely denotes the testator's purpose in establishing the trust and the identity of the beneficiary. However, the second part of item 5 states:

> If at any time it shall be made to appear to the satisfaction of the Trustees . . . that any of the funds, in their hands belonging to this trust, is needed or can be used to advantage to promote and perpetuate said Hospital and aid sick, injured and suffering humanity, . . . then said Trustees are hereby authorized to use such sum or sums either with the income or principal of said Trust Fund *as in the discretion of a two-third majority* of said Board of Trustees shall be deemed wise and expedient. [Emphasis added.]

The second part of item 5 indicates that whether and when the income is to be distributed lies in the discretion of the Trustees, and they are "authorized" to make distributions in their discretion. We conclude that the trial court's findings of fact were not sup-

ported by the evidence, and thus the trial court erred in concluding that the trust was mandatory.

Therefore, the critical question is whether the Trustees using their discretionary power constructively delivered the income which was not actually paid to Davis Hospital. In the Trustees' resolution quoted in the trial court's findings, the Trustees stated that all income "has heretofore been distributed to Davis Hospital, Inc." Further, the trial court found that the Davis Hospital trustees "regarded all of the earnings (including capital gains) of the . . . Trust as Davis Hospital, Inc. property" but that they requested the Wagner Trustees to reinvest the funds not actually paid to the hospital. The trial court further found that Davis Hospital would "make the Trustees of the Wagner Trust aware of a particular need" and the Trustees would distribute cash when available so as not to sell the assets, and the rest of the funds were reinvested. Further, testimony at trial revealed that the Trustees "felt" the undistributed income belonged to Davis Hospital. The trial court stated also in its findings of fact:

> 37. The Trustees of the Wagner Trust considered the income (including capital gains) of the Trust not actually distributed to Davis Hospital, Inc. to be the property of Davis Hospital, Inc.

> 38. All income of the Wagner Trust (including capital gains) were distributed to the Davis Hospital Inc. annually. Some distributions were in the form of cash in response to a requested need. Other distributions were in the form of investments made by the Wagner Trustees of income not actually distributed for the benefit of and at the request of the Trustees of the Hospital.

> 39. The Trustees of the Wagner Trust did not segregate the assets it was reinvesting for the Davis Hospital, Inc. from the other assets. . . .

The trial court further found that in the Wagner Trust's federal and state tax returns filed 1946 to 1988 and in the possession of the Wagner Trust's certified public accounting firm (with the exception of the years 1957-1959 for which records and documents exist "from which all gross and net income and expenses" can be determined), "all net income including capital gains is shown as having been distributed."

The trial court concluded that all net income from 5 July 1946 to 2 July 1956 which was not actually paid to Mrs. Wagner and all net income from 2 July 1956 to 30 April 1983 was "either actually or constructively distributed" to Davis Hospital. Thus, the trial court concluded that:

10. Davis Hospital, Inc. is entitled to and the owner of funds in the possession of L. C. Wagner Trustees in the amount of $1,695,882.09; said figure derived as follows:

(a) all undistributed net income from the L. C. Wagner Trust for the period of time from July 5, 1946 until July 2, 1956 in the amount of $115,599.92

(b) all undistributed net income from the L. C. Wagner Trust for the period of time from July 2, 1956 until April 30, 1983 in the amount of $947,813.31

(c) 69.29% of all undistributed net income from the L. C. Wagner Trust for the period of time from May 1, 1983 until and including December 31, 1988 in the amount of $632,468.86.

Appellees contend that even if the trust is discretionary, the Trustees exercised their discretion by allocating all the income to the hospital. Barium Springs cites several tax cases and contends that under these cases the absence of documentary evidence that the funds were delivered precludes a finding of constructive delivery. Although the tax argument is persuasive, it is not necessarily controlling here.

In determining whether a negotiable note had been constructively delivered, our Supreme Court stated that "constructive delivery will be held sufficient if made with the intention of transferring the title, but there must be some unequivocal act, more than the mere expression of an intention or desire" such that " 'the maker in some way evinced an intention to make it an enforceable obligation against himself, according to [the instrument's] terms, by surrendering control over it and intentionally placing it under the power of the payee.' " *Cartwright v. Coppersmith*, 222 N.C. 573, 578, 24 S.E.2d 246, 249 (1943); *Sinclair v. Travis*, 231 N.C. 345, 57 S.E.2d 394 (1950). Here the Trustees clearly intended that the income be paid to Davis Hospital; the Davis Hospital trustees considered all such income to have been distributed, and the trustees filed tax returns reporting that such income had been paid. Thus, we conclude that there is some evidence to support the trial court's

TRUSTEES OF WAGNER TRUST v. BARIUM SPRINGS HOME FOR CHILDREN

[102 N.C. App. 136 (1991)]

findings that the undistributed income was constructively delivered, and even if there is some evidence to support findings to the contrary, we cannot say that the trial court erred in finding and concluding the Trustees "constructively distributed" the income not actually paid to Davis Hospital.

However, item 2 of the will states that income from the testator's property was to be used by his wife in the upkeep of his property and to supplement the dividends used for her support and that "[a]ll other income collected from my property during the life of my wife, Mary Wagner, shall be held by her either as Executrix or Trustee and shall become a part of the principal of my estate." Thus, under the terms of the will, income not actually distributed to her became part of the trust corpus, and the trial court erred in concluding that the income not actually paid to Mrs. Wagner during her lifetime was "constructively delivered."

## IV.

[4] Barium Springs next contends that the trial court erred in ruling that capital gains should be treated as income and that capital gains had been constructively delivered to Davis Hospital. Here the trial court found that the Trustees "considered the income (including capital gains) of the Trust not actually distributed to Davis Hospital, Inc. to be the property of Davis Hospital, Inc." The trial court further stated in its findings of fact that in the tax returns filed "all net income including net capital gains is shown as having been distributed." In its conclusions of law, the trial court stated that the testator intended the term "income" to include capital gains and concluded that all "net income generated by the L. C. Wagner Trust [except the income actually distributed to Mary Wagner] was either actually or constructively distributed by the L. C. Wagner Trust to Davis Hospital, Inc."

We recognize that "principal" includes "[c]onsideration received by the trustee . . . on the sale or other transfer of principal." N.C. Gen. Stat. § 37-19(b)(1) (1984) (applicable under N.C. Gen. Stat. § 37-40 to any receipt received after 1 January 1974 whether the trust was established before or after that date). Appellees, however, argue that N.C. Gen. Stat. § 37-18(a)(1) (1984) applies. The statute provides that a trust is administered regarding allocation of receipts and expenditures "[i]n accordance with the terms of the trust instrument or will, notwithstanding contrary provisions of this Article." The will is silent on the allocation of capital gains, and thus the

trial court was incorrect in concluding that the testator intended "income" to include capital gains. We concluded above, however, that the trust is discretionary and that under the terms of the trust the Trustees are "authorized to use such sum or sums either with the income or principal . . . as in the discretion of a two-third majority of said Board of Trustees shall be deemed wise and expedient." Here the evidence supports the findings of fact and thus the conclusion that the trustees in their discretion "constructively distributed" the capital gains as we determined above in regard to income. Thus, the trial court did not err in concluding that capital gains had been "constructively distributed" to Davis Hospital.

## V.

[5] Defendant Craig also contends that both Davis Hospital and Barium Springs no longer exist and that, therefore, there are no remaining beneficiaries under the trust. Thus, Ms. Craig argues that under the North Carolina rules of descent and distribution, the funds pass to the next of kin. We concluded above that Barium Springs, the alternate beneficiary, still exists, and thus the trust does not fail.

We conclude that Barium Springs as alternate beneficiary is entitled to benefit from the trust excluding income including capital gains "constructively distributed" to Davis Hospital from 2 July 1956 up until the time Davis Hospital ceased "to operate and function as a hospital."

Reversed in part, affirmed in part, and remanded to the trial court for entry of judgment consistent with this opinion.

Judge PHILLIPS concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

With the exception of the majority's treatment of the issue of constructive delivery of the undistributed income and capital gains, I concur in the majority opinion. With respect to the issue of constructive delivery, I dissent.

I question whether there is sufficient competent evidence in the record to support the finding of fact that the Wagner Trustees considered the undistributed income and capital gains to be Davis Hospital's property. This finding was based in large part on a resolution passed by the Wagner Trustees in December of 1983, approximately thirty-seven years after inception of the trust. Therefore, the resolution does not reveal the Wagner Trustees' intent prior to 1983.

However, assuming that there is competent evidence to support this finding of fact, it does not support a conclusion that there was a constructive delivery of the undistributed income and capital gains. Constructive delivery requires more than intent. It requires an "unequivocal act" resulting in the surrender of control over the funds. *Cf. Sinclair*, 231 N.C. at 352-53, 57 S.E.2d at 399 (constructive delivery of note). Here, the majority holds that the filing of the tax returns reporting the income and capital gains as having been distributed is the necessary unequivocal act surrendering control. I disagree. The tax return entries did no more than give the trust a tax break. It did not result in the surrender of control over the funds. In fact, the Davis Hospital trustees were not even aware of the tax return entries. Furthermore, there is nothing in the record which would show that the Wagner Trustees in any way segregated the funds or made any bookkeeping entry to reflect the transfer of the income or capital gains to Davis Hospital. I see no unequivocal act resulting in the loss of control and therefore no constructive delivery of the undistributed income and capital gains. Accordingly, I would reverse the judgment of the trial court.