MARY C. MORRIS, CORNELIA K. WILY; AND JOSEPH ERVIN MORRIS, PLAINTIFFS V. THE E.A. MORRIS CHARITABLE FOUNDATION; WACHOVIA BANK OF NORTH CAROLINA, N.A., TRUSTEE; JOHN S. THOMAS, TRUSTEE; ROY COOPER, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA03-189

(Filed 16 December 2003)

1. **Trusts— remainder beneficiary—impossibility or impracticability of trust carrying out charitable purpose**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' complaint seeking to change the remainder beneficiary of four trusts based on alleged impossibility or impracticability of the trust to carry out its charitable purpose if the pertinent Foundation is the remainder beneficiary, because: (1) the Foundation's ability to carry out its generalized purpose is not jeopardized, much less rendered impossible or impracticable, by changes in management style, office location, or selection of particular charitable recipients; and (2) the Foundation continues to exist and to make charitable distributions. N.C.G.S. § 36A-53.

**2. Appeal and Error— preservation of issues—failure to raise issue below**

> Although plaintiffs presented several new theories of relief on appeal in an action seeking to change the remainder beneficiary of four trusts, issues and theories of a case not raised below will not be considered on appeal.

Appeal by plaintiffs from judgment entered 4 November 2002 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 17 November 2003.

*Maupin Taylor & Ellis, P.A., by Charles L. Steel, IV, M. Keith Kapp, Tyler L. Randolph, and Kevin W. Benedict, for plaintiff-appellants.*

*Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller, for plaintiff-appellee E.A. Morris Charitable Foundation.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Debbie W. Harden, for plaintiff-appellee Wachovia Bank of North Carolina, N.A.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis, III, and Jacob H. Wellman, for plaintiff-appellee John Thomas, Trustee.*

*Attorney General Roy Cooper, by Assistant Attorney General Kay L. Hobart.*

LEVINSON, Judge.

This appeal arises from a suit filed by plaintiffs (Mary Morris, Joseph Morris, and Cornelia Wily) seeking to change the remainder beneficiary of four trusts. Two of these trusts were established in 1993 by E.A. Morris; the other two were established in 1999 by Mary Morris. Each trust names one of the plaintiffs as lifetime income beneficiary, and all four trusts name the E.A. Morris Charitable Foundation (the Foundation) as the charitable remainder beneficiary. Plaintiffs appeal from the trial court's dismissal of their lawsuit, pursuant to N.C.R. Civ. P. 12(b)(6) (2003). We affirm the trial court.

The relevant facts are these: The Foundation, which was created by Mr. E.A. Morris in 1980, has no members and is governed by its board of directors. E.A. Morris was involved with the Foundation until his death in 1998, and the initial board of directors included

several members of the Morris family. Plaintiffs filed suit on 7 August 2002, twenty years after E.A. Morris established the Foundation. They alleged that, after the trust instruments were executed naming the Foundation as remainder beneficiary, the board of directors made various changes to the Foundation's administration, management, and pattern of charitable giving. Plaintiffs asserted that as a result of these changes, "the charitable intentions of [E.A.] Morris and Mary C. Morris have become impossible and impractical [sic] of fulfillment." Plaintiffs asked the trial court to (1) assume jurisdiction over the matter under N.C.G.S. § 36A-53; (2) find that the charitable remainder interests set forth in the trusts at issue had become impossible or impracticable to carry out "due to the change in control of the E.A. Morris Charitable Foundation," and; (3) reform the trust agreements. We note that plaintiffs filed a related suit against several members of the Foundation's board of directors, seeking their removal from the board and other relief, which is also decided this date. *See Morris v. Thomas*, 161 N.C. App. ——, —— S.E.2d —— (2003).

On 15 August 2002 the Foundation moved to dismiss plaintiff's claim for reformation of the trust agreement, pursuant to N.C.R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6). Defendant Thomas joined the Foundation's motion to dismiss on 21 October 2002. On 4 November 2002 the trial court granted the defendants' motions to dismiss plaintiffs' complaint "for failing to state a claim upon which relief can be granted" and dismissed plaintiffs' action with prejudice, taxing costs to plaintiffs. From this order, plaintiffs appeal.

### Standard of Review

[1] The trial court dismissed plaintiffs' complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. "A motion to dismiss is the usual and proper method of testing the legal sufficiency of the complaint. For the purpose of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (citation omitted). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986) (citation omitted). Further, "on a motion to dismiss pursuant to Rule 12(b)(6) . . . [t]he

complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000).

## Applicability of N.C.G.S. § 36A-53

Plaintiffs' complaint sought relief under N.C.G.S. § 36A-53 (2003), which provides in relevant part:

> If a trust for charity is or becomes illegal, or impossible or impracticable of fulfillment . . . and if the settlor, or testator, manifested a general intention to devote the property to charity, any judge of the superior court may . . . order an administration of the trust, devise or bequest as nearly as possible to fulfill the manifested general charitable intention of the settlor or testator. . . .

G.S. § 36A-53(a). This statute "expressly [gives] the courts the power to apply the *cy pres* doctrine to charitable trusts." *YWCA v. Morgan*, 281 N.C. 485, 489, 189 S.E.2d 169, 171 (1972). The *cy pres* doctrine "derives its meaning from the Anglo-French phrase *cy pres comme possible*, meaning 'near as possible,' " and allows a court, in the event that the "purpose set forth in a charitable trust becomes impossible, illegal or impracticable" to redirect the bequest to "a purpose as near as possible to that originally selected" by the settlor of the trust. *Id.* (citation omitted). However, "the statute applies only when three conditions have been met: (1) the testator manifested a general charitable intent; (2) the trust has become illegal, impossible, or impracticable; (3) the testator has not provided for an alternative disposition if the trust fails." *Trustees of Wagner Trust v. Barium Springs Home for Children*, 102 N.C. App. 136, 146, 401 S.E.2d 807, 813, *aff'd in part, rev'd in part on other grounds*, 330 N.C. 187, 409 S.E.2d 913 (1991) (citation omitted). In the instant case, the dispositive issue is whether the disposition of the remainder beneficiary interest to the Foundation has become "impossible, or impracticable."

"Impossible" is defined as "not possible; that cannot be done, occur, or exist," while "impracticable" is defined as "impossible in practice." Oxford Encyclopedic English Dictionary 709 (Judy Pearsall & Bill Trumble, eds., 2nd ed. 1995). Thus, " '[i]f the failed gift was to or for a charitable institution which never existed, or has ceased to exist, or is too vaguely described to be identified, the court will . . . deliver the principal to another like institution[.]' " *Riverton Area Fire Protection District v. Riverton Volunteer Fire Department*,

MORRIS v. E.A. MORRIS CHARITABLE FOUND.

[161 N.C. App. 673 (2003)]

208 Ill. App. 3d 944, 950, 153 Ill. Dec. 165, 566 N.E.2d 1015, 1019 (1991) (quoting G. Bogert, Trusts and Trustees § 442, at [214] ([Rev.] 2d ed. [1991]). *See Board of Trustees of UNC-CH v. Heirs of Prince*, 311 N.C. 644, 646, 655, 319 S.E.2d 239, 241, 247 (1984) (where testatrix left funds "for the purpose of erecting a building for the Carolina Playmakers" Court holds that "construction of the new dramatic arts facility . . . expressly made 'impracticable' the achievement of [her] trust").

However, "[a] donor who brings into existence a charitable institution must recognize that most institutions are likely to change with time[.]" *Trustees of Dartmouth College v. Quincy*, 357 Mass. 521, 533-34, 258 N.E.2d 745, 753 (1970). Thus, the general rule is that, in the absence of an express restriction or condition contained in the trust instrument itself, if the intended beneficiary continues to function at the time the bequest is to take effect, the trust is not impossible or impracticable to effectuate. *Trustees of Wagner Trust v. Barium Springs Home for Children*, 102 N.C. App. 136, 401 S.E.2d 807 (1991). In this regard, the analysis in *Wagner Trust, id.*, is instructive. The settlor therein established a trust in 1942, naming his wife as lifetime income beneficiary and a local hospital as remainder beneficiary. The trust provided that, if the hospital was no longer in existence at the time of distribution of the remainder assets, the alternate remainder beneficiary was the Barium Springs orphanage. In 1988, when a declaratory judgment action was filed to determine the proper distribution of funds, Barium Springs was no longer an orphanage, but instead operated "a program of working exclusively with troubled, alienated and disturbed adolescents, for which treatment was not provided free of charge." *Id.* at 140, 401 S.E.2d at 810. Upon this evidence, the trial court found that "the purpose, function, and services of Barium Springs have changed" and concluded that "the testator's intention regarding Barium Springs [was] 'impossible or impracticable to fulfill.' " *Id.* at 143, 401 S.E.2d at 811. This Court reversed, noting that "the will does not specify any condition requiring the institution to continue to function in the identical capacity in which it operated as of the death of the testator. Nonetheless, the trial court . . . apparently impl[ied] a condition that it not deviate from its precise function at the time of the execution of the will[.]" *Id.* at 144, 401 S.E.2d at 812. The Court rejected this interpretation, and held:

[T]here is <u>no express condition in the will</u> <u>requiring</u> <u>that</u> <u>Barium Springs remain the same,</u> and <u>we will not imply such a</u>

MORRIS v. E.A. MORRIS CHARITABLE FOUND.

[161 N.C. App. 673 (2003)]

condition . . . [because] a charitable organization would [then] be required to function in the exact same capacity as it did at the time the trust was created. . . . [C]haritable institutions would be unable to adapt to the changing needs of society . . . <u>[S]uch an implied condition would lead to difficult determinations as to how much change is permitted</u> and whether the charitable organization has changed to such an extent that it is no longer the charitable institution the testator intended to benefit. <u>We do not wish to resort to such line-drawing.</u>

*Id.* at 145, 401 S.E.2d at 812 (emphasis added).

Plaintiffs argue that the purpose of the trusts, and the charitable intention of the settlors, are 'ambiguous' and should be determined by reference to plaintiffs' allegations regarding their personal understanding of the settlors' wishes. Plaintiffs misstate the law in this regard. The issue of the "settlor's intent" pertains <u>not</u> to the question of whether the trust has become impossible or impracticable to carry out, but instead to whether or not the settlor evinced a "general charitable intent." Extrinsic evidence regarding the testator's actions and statements while alive may be relevant to the determination of this issue. *See Board of Trustees of UNC-CH*, 311 N.C. 644, 319 S.E.2d 239 (comparing the evidence of testator's general charitable intent to that of the testator in *Wilson v. Church*, 284 N.C. 284, 200 S.E.2d 769 (1973)). However, the holding of *Wagner Trust, id.* is that this Court will not look beyond the express language of the trust instrument itself in determining whether the trust is impossible or impracticable, and will neither "read between the lines" to imply unstated conditions, nor engage in assessments of how much a beneficiary may change before it is "disqualified" from serving as remainder beneficiary. In the instant case, the trust instruments do not contain any restrictions or conditions pertaining to the management, administration, or distribution of funds by the Foundation.

Nor would the changes alleged by plaintiffs make it impossible or impracticable for the Foundation to carry out its stated mission. Plaintiffs herein asserted that the Foundation's board of directors (1) voted to remove Mary and Joseph Morris from the board; (2) made certain administrative changes, including, *e.g.*, using a different bank, hiring a different law firm to represent the Foundation, and changing the location of the Foundation's office; (3) made decisions with which plaintiffs disagreed, such as increasing the compensation paid to the Foundation's president, and revising the Foundation's bylaws, and; (4) distributed income to several organizations "to which neither

[E.A.] Morris nor the Morris family had any interest." On this basis, they allege that it is impossible or impracticable for the trust to carry out its charitable purpose if the Foundation is the remainder beneficiary. However, the purposes for which the Foundation was established are very general and contemplate gifts to a wide variety of nonprofits. Though not included in the record of this case, we take judicial notice of the Articles of Incorporation of the Foundation, included in the record of *Morris v. Thomas,* —— N.C. App. ——, —— S.E.2d —— (COA03-237 filed 16 December 2003), also decided this date. *See Sugg v. Field,* 139 N.C. App. 160, 163, 532 S.E.2d 843, 845 (2000) ("a court . . . may take judicial notice of its own records in an interrelated proceeding involving the same parties"). The Articles of the Foundation state, in relevant part, the following:

. . . .

3. The purpose for which the Corporation is organized is <u>to oper-ate exclusively for charitable, religious, educational and scientific purposes</u>; and in carrying out such purpose the Corporation shall . . . make distributions and donations as determined from time to time by the Board of Directors to the following:

(a) To <u>colleges, universities and other schools,</u> . . .

(b) To <u>hospitals and organizations engaged in medical research,</u> . . .

(c) To <u>churches and other religious organizations,</u> . . .

(d) To <u>such other organizations as determined from time to time by the Board of Directors of</u> the Corporation[]. . . .

(emphasis added). The only other restriction on the Foundation's choice of recipients is that "said recipient [must] qualif[y] as an exempt organization under [§] 501(c)(3) of the [IRS] Code." We conclude that the Foundation's ability to carry out its generalized purpose is not jeopardized, much less rendered impossible or impracticable, by changes in, *e.g.,* management style, office location, or selection of particular charitable recipients.

Plaintiffs' complaint establishes that the Foundation continues to exist and to make charitable distributions. We conclude that "the complaint on its face reveals that no law supports plaintiff's claim[,]" *Bumgardner,* 318 N.C. at 175, 347 S.E.2d at 745, and that the trial court did not err by granting defendants' Rule 12(b)(6) motion. This assignment of error is overruled.

**[2]** Plaintiffs also present several new theories of relief on appeal, including (1) direct relief under the Declaratory Judgment Act, (2) the "doctrine of equitable approximation," (3) the "doctrine of deviation," and (4) relief under G.S. § 36A-23.1. "[Plaintiffs] raise th[ese] issue[s] for the first time on appeal to this Court. This Court has long held that issues and theories of a case not raised below will not be considered on appeal, and th[ese] issue[s are] not properly before this Court." *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) (citation omitted). These issues are not properly before us.

The trial court's dismissal of plaintiffs' complaint is

Affirmed.

Chief Judge EAGLES and Judge McGEE concur.